1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   David W. Quinto (Bar No. 106232)
2    davidquinto@quinnemanuel.com
   Daniel C. Posner (Bar No. 232009)
3    danposner@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
5  Facsimile:  (213) 443-3100

6  Attorneys for Defendant
   Le Château, Inc.

7

8               UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

| | |
|---|---|
| 11   L.A. PRINTEX INDUSTRIES, INC., a California Corporation, | CASE NO. CV10 4264-ODW (FMOx) |
| 12           Plaintiff, | **NOTICE OF MOTION AND MOTION FOR SUMMARY** |
| 13       vs. | **JUDGMENT;** |
| 14 | **DECLARATIONS OF DAVID W.** |
| 15   LE CHÂTEAU, INC., a Canadian Corporation; and DOES 1-10, | **QUINTO AND ERIC POULIN; STATEMENT OF** |
| 16        Defendants. | **UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW; AND** |
| 17 | **[PROPOSED] ORDER FILED CONTEMPORANEOUSLY HEREWITH** |
| 18 | Date:  February 14, 2011 |
| 19 | Time:  1:30 p.m. |
| 20 | Crtrm.: 11<br>Judge:  Honorable Otis D. Wright II |

21

22      TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

23        PLEASE TAKE NOTICE that on February 14, 2011, at 1:30 p.m., defendant

24 Le Château, Inc. will, and hereby does, move the Court pursuant to <u>Fed. R. Civ. P.</u>

25 56 for an order granting summary judgment.

26        This motion is made on the ground that the undisputed evidence is that Le

27 Château, Inc. did not commit any act of copyright infringement actionable under the

28

1 laws of the United States and on the further ground that the assertion of personal
2 jurisdiction and venue as to Le Château, Inc. is improper.

3       This motion is based on this notice; the accompanying Memorandum of
4 Points and Authorities; the Separate Statement of Undisputed Facts and Conclusions
5 of Law; the Declarations of David W. Quinto and Eric Poulin; any matters of which
6 this Court may take judicial notice; and any additional argument and evidence as
7 may be presented at the hearing of this matter.

8                    **Statement of Rule 7-3 Compliance**

9       <u>Plaintiff's Refusal to Meet and Confer</u>.  As set forth more fully in the attached
10 Declaration of David W. Quinto dated January 11, 2011, plaintiff was placed on
11 notice of Le Château's contentions pursuant to a letter to plaintiff's counsel, Scott
12 Alan Burroughs, sent July 28, 2010.  The facts relied on in this motion were set
13 forth in a declaration of Eric Poulin dated and provided to plaintiff on September 28,
14 2010.  Mr. Poulin's declaration was further incorporated *in haec verba* into the
15 Parties' Rule 26(f) Joint Report dated September 28, 2010.

16       By e-mail message dated November 22, 2010, sent to Mr. Burroughs and his
17 partner, Stephen M. Doniger, counsel for Le Château requested to meet and confer
18 concerning summary judgment.  On November 24, 2010, Mr. Burroughs rejected
19 that request as not a "proper 7-3 notice setting forth in full the bases for your
20 proposed motion."  On November 25, 2010, Le Château provided
21 Messrs. Burroughs and Doniger with a more fulsome explanation of the bases of this
22 motion.  On November 30, 2010, Mr. Burroughs responded: "Can you further
23 explain your position so that we can consult with the client regarding your proposed
24 motion?"  By letter dated November 30, 2010, Le Château provided Mr. Burroughs
25 with a further explanation of the intended bases of its motion and further disclosed
26 that it also intended to seek Rule 11 sanctions.

27       For two weeks, there was no response.  Then, on December 14, 2010,
28 Mr. Burroughs stated that he was "available to meet and confer on Friday

1 [December 17] of this week." Le Château's counsel accepted that offer, agreeing to
2 meet on December 17, as requested. However, Mr. Burroughs immediately
3 responded that he would be "in deposition on Friday" and added, "I can't justify
4 billing partner-level rates on this small matter." Le Château's counsel immediately
5 responded that, "If that doesn't work, I'll be available after January 2."
6 Mr. Burroughs' response was to accuse Le Château of refusing to meet and confer.
7 Thereafter, plaintiff's counsel expressed no further interest in meeting and
8 conferring.
9
10 DATED: January 11, 2011        QUINN EMANUEL URQUHART &
11                                 SULLIVAN, LLP
12
13                               By
14                                     David W. Quinto
15                                     Attorneys for Defendant
                                       Le Château, Inc.
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF CONTENTS

2

**Page**

3

4

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

5

PRELIMINARY STATEMENT...............................................................................1

6

STATEMENT OF FACTS .....................................................................................2

7

ARGUMENT ........................................................................................................8

8

I.      SUMMARY JUDGMENT STANDARD .......................................8

9

II.     THE COMPLAINT HEREIN SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION ......................8

10

11

III.    THE COURT ALSO LACKS PERSONAL JURISDICTION OVER LE CHÂTEAU...................................................................................9

12

IV.     LE CHÂTEAU SHOULD BE AWARDED ITS COSTS AND ATTORNEYS' FEES .....................................................................11

13

CONCLUSION ..................................................................................................12

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF AUTHORITIES**

2
**Page**

3

## <u>Cases</u>

4  *Anderson v. Liberty Lobby, Inc.*,
      477 U.S. 242 (1986)..................................................................................8
5
   *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*,
6      818 F.2d 1466 (9th Cir. 1987) ..................................................................8

7  *Celotex Corp. v. Catrett*,
      477 U.S. 317, 106 S. Ct. 2548 (1986).......................................................8
8
   *Crescent Publishing Group v. Playboy Enterprises, Inc.*,
9      246 F.3d 142 (2d Cir. 2001).....................................................................12

10 *Fairbank v. Wunderman Cato Johnson*,
      212 F.3d 528 (9th Cir. 2000) .....................................................................8
11
   *Fantasy, Inc. v. Fogerty*,
12     94 F.3d 553 (9th Cir. 1996) .....................................................................12

13 *Filmvideo Releasing Corp. v. Hastings*,
      668 F.2d 91 (2d Cir. 1981).........................................................................9
14
   *Fogerty v. Fantasy, Inc.*,
15     510 U.S. 517 (1994)..................................................................................11

16 *Helicopteros Nacionales de Colombia, S.A. v. Hall*,
      466 U.S. 408..............................................................................................10
17
   *International Shoe Co. v. Washington*,
18     326 U.S. 310 (1945)..................................................................................10

19 *Lieb v. Topstone Industries, Inc.*,
      788 F.2d 151 (3d Cir. 1986).....................................................................11
20
   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
21     475 U.S. 574 (1986)....................................................................................8

22 *Reebok International Ltd. v. McLaughlin*,
      49 F.3d 1387 (9th Cir. 1995) ...................................................................11
23
   *Robert Stigwood Group v. O'Reilly*,
24     530 F.2d 1096 (2d Cir. 1976).....................................................................9

25 *Royalty Control Corp. v. Sanco, Inc.*,
      175 U.S.P.Q. 641 (N.D. Cal. 1972) ...........................................................8
26
   *Sher v. Johnson*,
27     911 F.2d 1357 (9th Cir. 1990) .................................................................10

28

*World-Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286, 100 S. Ct. 559 (1980)..........................................................................................10

*Ziegler v. Indian River County,*
   64 F.3d 470 (9th Cir. 1995) ..........................................................................................................9

*Ziller Electronics Lab GmbH v. Superior Court,*
   206 Cal. App. 3d 1222, 254 Cal. Rptr. 410 (1988)...................................................................10

## Statutes

28 U.S.C. § 1338(a)....................................................................................................................8

*Cal. Civ. Proc. Code § 410.10* ............................................................................................9, 10

*Fed. R. Civ. P. 1* ........................................................................................................................8

*Fed. R. Civ. P. 56(c)*..................................................................................................................8

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

3       Plaintiff's baseless action was quite clearly brought solely to gain leverage in

4   a prior action pending in Canada.  Le Château learned of plaintiff's existence on or

5   about August 25, 2008, when it received a letter from plaintiff's counsel, Scott Alan

6   Burroughs, sent to it in Canada.  That letter accused Le Château of infringing the

7   copyright in issue in this case.  On or about July 13, 2009, plaintiff sued Le Château

8   in Canada alleging that it had infringed the design in suit herein.  On April 30, 2010,

9   plaintiff deposed Eric Poulin, Le Château's Director of International Development,

10  in Montréal, Canada in the course of the Canadian litigation.  Mr. Poulin was

11  examined at length concerning the pattern in suit here and disclosed that 77

12  garments printed with the alleged pattern had been sold in the U.S.  As plaintiff well

13  knows, all 77 were sold by two New York stores owned by an affiliate of Le

14  Château, and none was sold in California.

15      Notwithstanding that it knew of no basis to sue Le Château in the United

16  States, much less in California, plaintiff nonetheless filed this suit on June 10, 2010

17  – one of hundreds of similar suits plaintiff has filed in this district over the past

18  several years – seeking damages, costs and attorneys' fees related to the sale of 77

19  garments in New York.  Plaintiff then ignored a July 28, 2010 letter from Le

20  Château's attorneys setting forth facts showing that Le Château is not subject to

21  jurisdiction or venue here.  It also ignored Mr. Poulin's September 28, 2010

22  declaration – repeated verbatim in the Parties' Rule 26(f) Joint Report dated

23  September 28, 2010 – setting forth facts showing that Le Château had not

24  committed any act of infringement under U.S. copyright laws and that it could not

25  be subject to personal jurisdiction or venue in California.  As reflected in the parties'

26  Rule 26(f) Joint Report, plaintiff's counsel conceded that plaintiff's *sole* basis for

27  filing suit here was that plaintiff's counsel were "imagining" that some act of

28

1  infringement "must have occurred here because plaintiff is located here."  Joint
2  Report at 3:6-8 (emphasis added).

3      Because the sole evidence is that any copying or reproduction of the pattern in
4  suit occurred in Canada and that the only 77 sales in the United States were made by
5  a non-party, Le Château is entitled to summary adjudication of the copyright claims.
6  Further, because Le Château is a Canadian corporation that conducts no business in
7  California and had no contact with California in connection with the events giving
8  rise to plaintiff's complaint, Le Château is entitled to dismissal for lack of personal
9  jurisdiction, as well as well as an award of its costs and fees.

10                    **Statement of Facts**

11      Le Château is a Canadian corporation having its principal place of business in
12  Montréal, Quebec, Canada.  It sells garments in Canada through its 226 retail stores
13  located in Canada.  An affiliate, Château Stores, has two stores located in the State
14  of New York that also sell garments.  Neither Le Château nor the New York affiliate
15  has ever (i) operated a retail store in California; (ii) owned any business registered in
16  California; (iii) obtained any type of license or permit from the State of California;
17  (iv) maintained a bank account in California; (v) had an agent for service of process
18  in California; (vi) filed a lawsuit or, before now, been sued in California; (vii) had
19  employees based in California; (viii) engaged or employed representatives or agents
20  in California; (ix) owned property in California; (x) advertised in California; (xi)
21  maintained a website that solicited or accepted purchase from California residents;
22  or (xii) shipped goods to California.[1]

23      Le Château either purchases from third-party suppliers the garments it and
24  Château Stores sell or manufactures them itself.  When Le Château purchases fabric,
25  it typically does so either by acquiring a fabric design from a designer or by

26
27      [1]  Declaration of Eric Poulin dated January 11, 2011 ("Poulin Dec."), ¶ 8.
28

1  acquiring fabric from a fabric printing mill.  Le Château has attempted to ascertain
2  how it acquired the pattern at issue in this action.  As best it can determine, it
3  acquired the pattern in fall 2006.  At that time, it had never heard of plaintiff L.A.
4  Printex Industries.  Following its internal investigation, Le Château concluded that it
5  likely acquired the pattern in suit by purchasing the design in Canada, as opposed to
6  purchasing fabric imprinted with the design.[2]

7       After acquiring the design, Le Château engaged another Canadian company,
8  Canstar, to print fabric bearing the design.  77 garments with the pattern in suit were
9  subsequently sold by Château Stores in New York.  No garments with the pattern in
10  suit were sold in California and no garments bearing the pattern in suit were sold
11  anywhere in the U.S. by Le Château.[3]

12       In August 2008, Le Château learned of plaintiff's existence when it received a
13  cease and desist letter sent by its attorney, Scott Alan Burroughs.  That letter
14  accused Le Château of infringing a U.S. copyright registration that plaintiff
15  purportedly owns in the copyright in suit.  On or about July 13, 2009, plaintiff sued
16  Le Château in Federal Court in Montréal, Canada.  That suit alleged that Le Château
17  had infringed plaintiff's purported copyright in the pattern now in suit in this action.
18  On April 30, 2010, Mr. Poulin was deposed by L.A. Printex in the Canadian action.
19  During that deposition, he disclosed that 77 garments printed with the pattern in suit
20  have been sold in New York.[4]

21       Thereafter, on June 10, 2010, plaintiff initiated this action against Le Château.
22  By letter dated July 28, 2010, Le Château advised plaintiff's attorneys, Stephen M.
23  Doniger and Scott Burroughs, that it does not have any stores in California; never
24  obtained any license or permit from the State of California; never maintained a bank

25  _____

26  [2]  Id., ¶¶ 10-11.
27  [3]  Id., ¶ 11.
    [4]  Id., ¶¶ 4-5.
28

1  account in the State of California; never had an agent for service of process in the

2  State of California; never filed suit in the State of California; has never before been

3  sued in the State of California; has never had an employee based in the State of

4  California; has never had a representative or agent based in the State of California;

5  has never owned any property in the State of California; has never advertised in the

6  State of California; has never maintained any web site that solicited or accepted

7  orders from residents of the State of California; and, at least for the past five years,

8  has never shipped goods to anyone within the State of California.  Accordingly, it

9  asked that plaintiff dismiss the action against it.[5]

10       Because plaintiff refused to dismiss this action, Le Château was forced on

11  August 23, 2010, to answer the Complaint.  The preliminary statement to Le

12  Château's Answer recited that:

13          This action concerns the sale of just 77 garments by

14          defendant's New York subsidiary, resulting in a profit to

15          the subsidiary of less than $500.  Neither Defendant nor its

16          subsidiary transact business in California, sell garments to

17          Californians, advertise in California, solicit business in

18          California, or maintain any business presence in

19          California.[6]

20       Because plaintiff continued to prosecute the action, Le Château conducted an

21  early meeting of counsel on September 28, 2010, with plaintiff's counsel, who

22  candidly admitted that, notwithstanding plaintiff's allegations to the contrary in its

23  complaint, plaintiff is unaware of any facts showing that Le Château (i) is subject to

24  jurisdiction in California; (ii) is subject to venue in California, or (iii) has ever

25  _____

26    [5]  Declaration of David W. Quinto dated January 11, 2011 ("Quinto Dec."), ¶ 5
and Exhibit D thereto.

27    [6]  Id., ¶ 3 and Exhibit B thereto.

28

1  transacted business in the United States.  Plaintiff's counsel explained that plaintiff's

2  *sole* basis for filing suit in California is that plaintiff's counsel were "imagining"

3  that some act of infringement "*might* have occurred here because plaintiff is located

4  here."  That admission is reflected in the parties' Rule 26(f) Joint Report.  Plaintiff's

5  counsel additionally refused to state whether she believed that plaintiff's counsel

6  had met their ethical obligations under <u>Fed. R. Civ. P.</u> 11 in filing suit.[7]

7       Le Château then provided plaintiff's counsel with a declaration signed under

8  penalty of perjury by Eric Poulin, Le Château's Director of International

9  Development, confirming that Le Château's only two affiliated stores in the United

10  States are in New York and are owned by Château Stores, Inc.  Mr. Poulin's

11  declaration further confirmed that Le Château evidently acquired the pattern in suit

12  in Canada in 2006 and that the garments in suit were printed by a Canadian

13  company named Canstar.  Finally, Mr. Poulin noted that Le Château has never done

14  business with plaintiff and, indeed, was entirely unaware of plaintiff's existence

15  before receiving a cease and desist letter from plaintiff in Canada.  In addition to

16  providing a signed copy of Mr. Poulin's declaration to plaintiff's counsel, Le

17  Château also included it in the parties' Rule 26(f) Joint Report.[8]

18       Thereafter, plaintiff continued to prosecute the action in bad faith.  It

19  demanded a settlement payment many times greater than the *total* profits earned by

20  non-party Château Stores, Inc. and, in addition, demanded relief to which it would

21  not be entitled even in the highly unlikely event it prevailed at trial.  Accordingly,

22  Le Château has been forced to seek summary judgment (and will seek Rule 11

23  sanctions).[9]

24

25

---

26  [7]  <u>Id.</u>, ¶ 4 and Exhibit C thereto.
27  [8]  <u>Id.</u>, ¶ 4 and Exhibit C thereto.
28  [9]  <u>Id.</u>, ¶ 9.

1    Even after notifying plaintiff's counsel that Le Château had no alternative but
2  to ask  the Court for relief, plaintiff and its counsel continue to act in bad faith.  On
3  November 22, 2010, Le Château asked plaintiff's counsel to meet and confer
4  concerning a summary judgment motion.  However, plaintiff's attorneys rejected
5  that request, noting that they "do not believe you are acting in good faith, or in the
6  best interests of your client; but, so be it."[10]

7    On November 25, 2010, Le Château's counsel again requested to meet and
8  confer concerning summary judgment, explaining that Le Château had not
9  committed any act of infringement actionable under U.S. copyright laws and is not
10  subject to jurisdiction or venue in California.  On November 30, plaintiff's counsel
11  once again refused to meet and confer, writing that they "fail to see how your client
12  did not commit any acts of copyright infringement" and further asking that Le
13  Château "explain [its] position."[11]

14    On November 30, 2010, Le Château's counsel again wrote to plaintiff's
15  counsel advising that, in addition to seeking an award of costs and fees under the
16  Copyright Act, it would also seek an award of fees pursuant to Fed. R. Civ. P. 11.
17  The letter additionally noted that because the Le Château is not subject to
18  jurisdiction here, it is entitled to the entry of a judgment in its favor.[12]

19    Two weeks later, on December 14, 2010, plaintiff's counsel responded by
20  stating that they were "available to meet and confer on Friday [December 17] of this
21  week."[13]

22    Le Château's counsel wrote back, affirming that Le Château "would be happy
23  to try to resolve this without the need for a motion, if possible."  Le Château's

24

25    [10]  Id., ¶ 8 and Exhibit F thereto.
26    [11]  Id., ¶¶ 9-10 and Exhibits G and H thereto.
27    [12]  Id., ¶ 11 and Exhibit I thereto.
      [13]  Id., ¶ 12 and Exhibit J thereto.
28

1 counsel then accepted the offer to meet and confer on Friday, December 17.  But

2 when he did so, however, plaintiff's counsel immediately retracted his agreement to

3 meet and confer:

4             I'm in deposition on Friday, and have new client meetings

5             stacked all afternoon.  Plus, I can't justify billing partner-

6             level rates on this small matter.  Please call Regina of my

7             office on Friday to discuss.[14]

8       Le Château's counsel wrote back, noting that:

9             You asked to meet and confer Friday.  If that doesn't

10            work, I'll be available after January 2.  You or she are

11            welcome to meet with me immediately after that, before

12            we file.[15]

13      The response of plaintiff's counsel was an unequivocal refusal to meet and

14 confer:

15            Let this confirm that your office has decided not to meet

16            and confer as required by L.R. 7-3 in regard to its

17            proposed motion.[16]

18      Le Château then responded that the case was "quite the opposite" but plaintiff

19 never agreed to meet and confer.[17]

20      Accordingly, plaintiff has no choice but to ask the Court to dismiss a baseless

21 action that was brought without *any* pre-filing investigation and that has since been

22 maintained in bad faith.

23

24

---

25  [14]  Id., ¶¶ 13-14 and Exhibit K and L thereto.
26  [15]  Id., ¶ 15 and Exhibit M thereto.
27  [16]  Id., ¶ 16_ and Exhibit N thereto.
      [17]  Id., ¶ 17 and Exhibit O thereto.
28

1

<u>**Argument**</u>

2 **I.    SUMMARY JUDGMENT STANDARD**

3         Summary judgment is "properly regarded not as a disfavored procedural
4 shortcut, but rather as an integral part of the Federal Rules as a whole, which are
5 designed 'to secure the just, speedy and inexpensive determination of every action.'"
6 *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986) (quoting
7 *Fed. R. Civ. P.* 1). Summary judgment should be entered when no genuine issue of
8 material fact exists and the moving party is entitled to judgment as a matter of law.
9 *Fed. R. Civ. P.* 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

10        Under *Celotex*, Le Château need not negate plaintiff's claims if it can show
11 that plaintiff cannot meet its burden to prove them. Pursuant to Rule 56, "a moving
12 defendant may shift the burden of producing evidence to the nonmoving plaintiff
13 merely by 'showing' — that is, pointing out through argument — the absence of
14 evidence to support plaintiff's claim." *Fairbank v. Wunderman Cato Johnson*, 212
15 F.3d 528, 532 (9th Cir. 2000). Moreover, if the factual context makes the non-
16 moving party's claim implausible, that party must come forward with more
17 persuasive evidence than would otherwise be necessary to show that there is a
18 genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
19 574, 587 (1986). No longer can it be argued that any disagreement about a material
20 issue of fact precludes the use of summary judgment. *California Architectural*
21 *Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.
22 1987).

23 **II.   THE COMPLAINT HEREIN SHOULD BE DISMISSED BECAUSE**
24       **THE COURT LACKS SUBJECT MATTER JURISDICTION**

25        This Court would have subject matter jurisdiction over plaintiff's copyright
26 claims only if those claims arose under the U.S. Copyright Act. *See* 28 U.S.C.
27 § 1338(a). An action "arises under" the Copyright Act "if and only if the complaint
28 is for a remedy expressly granted by the Act." *See Royalty Control Corp. v. Sanco*,

1  *Inc.*, 175 U.S.P.Q. 641, 642 (N.D. Cal. 1972). The Copyright Act is territorial;
2  rights under it extend no farther than the borders of the United States. *See, e.g.,*
3  *Filmvideo Releasing Corp. v. Hastings*, 668 F.2d 91, 93 (2d Cir. 1981); *Robert*
4  *Stigwood Group v. O'Reilly*, 530 F.2d 1096, 1101 (2d Cir. 1976).

5       Here, the sole evidence is that Le Château did not commit any act of
6  copyright infringement in the United States. Apart from the fact that Le Château
7  denies it has infringed any of plaintiff's alleged copyrights anywhere or at any time,
8  it is undisputed that Le Château had never even heard of plaintiff until it received
9  plaintiff's cease and desist letter. It is also undisputed that Le Château did not
10  obtain the pattern and suit from plaintiff. Instead, it appears that Le Château
11  obtained the pattern and suit from a third party in Canada and then authorized
12  another Canadian company having a manufacturing facility in China to make the
13  garments in suit. Although 77 garments printed with the pattern in which plaintiff
14  claims copyright protection were sold in the United States, they were not sold by Le
15  Château. Rather, they were sold by a corporate affiliate of Le Château. Le Château
16  did not, itself, sell any of the challenged garments to anyone in the United States.

17       Accordingly, Le Château has not engaged in any conduct in the United States
18  that could give rise to liability under U.S. copyright laws, even if plaintiff could
19  prove that it is the owner of the copyright in suit and that the 77 garments sold in
20  New York were infringing. For that reason, alone, Le Château is entitled to the
21  entry of judgment in its favor.

22  **III.   THE COURT ALSO LACKS PERSONAL JURISDICTION OVER LE**
23  **CHÂTEAU**

24       The plaintiff always has the burden to establish personal jurisdiction. *See,*
25  *e.g., Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). California's
26  long-arm statute authorizes California courts to exercise personal jurisdiction to the
27  full extent of due process. *Cal. Civ. Proc. Code* § 410.10. Personal jurisdiction
28  over a non-resident defendant depends upon the existence of two criteria:  (1) valid

1  service of process; and (2) the existence of minimum contacts between the
2  defendant and the forum state. *See Ziller Electronics Lab GmbH v. Superior Court,*
3  206 Cal. App. 3d 1222, 1224, 254 Cal. Rptr. 410, 413 (1988).  As shown above,
4  there has not been valid service of process.  As shown below, the minimum contacts
5  requirement is also not satisfied.

6       California's long-arm statute provides that jurisdiction may be exercised "on
7  any basis not inconsistent with the Constitution of this state or of the United States."
8  *Cal. Civ. Proc. Code* § 410.10.  Due process under the U.S. Constitution requires
9  that a non-resident defendant have "minimum contacts" with a forum state so that
10 maintaining a suit against the defendant does not offend "traditional notions of fair
11 play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310,
12 316 (1945).  In other words, the "defendant's conduct and connection with the forum
13 State [must be] such that [it] should reasonably anticipate being haled into court
14 there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S. Ct.
15 559 (1980).

16      There are two types of personal jurisdiction:  specific and general.  *See*
17 *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8-9
18 (1984).  General jurisdiction may be exercised if a non-resident defendant's
19 activities are "substantial or continuous and systematic," even if the claims are
20 unrelated to those activities. *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990).

21      Here, general jurisdiction obviously does not apply because Le Château has
22 no "substantial or continuous and systematic" contact with California.  It does not
23 have any offices, agents or employees here and does not transact business here.[18]

24      Nor is Le Château subject to specific jurisdiction.  The exercise of specific
25 jurisdiction requires that the "non-resident defendant must purposefully direct his
26

27     [18]  Poulin Dec., ¶ 8.

28

1   activities or consummate some transaction with the forum or resident thereof; or
2   perform some act by which he purposefully avails himself of the privilege of
3   conducting activities in the forum, thereby invoking the benefits and protections of
4   its laws; the claim must be one which arises out of or relates to the defendant's
5   forum-related activities; [and] the exercise of jurisdiction must comport with fair
6   play and substantial justice." *Reebok International Ltd. v. McLaughlin*, 49 F.3d
7   1387, 1391 (9th Cir. 1995).  Because Le Château has not engaged in any activity in,
8   or had any contact with, California giving rise to plaintiff's claim, jurisdiction is
9   lacking.

10      The action should therefore be dismissed because Le Château is not subject to
11   either general or specific jurisdiction.

12   **IV.   LE CHÂTEAU SHOULD BE AWARDED ITS COSTS AND**
13        **ATTORNEYS' FEES**

14      Section 505 of the Copyright Act provides that "the court in its discretion may
15   allow the recovery of full costs by or against any party."  Further, "the court may
16   award a reasonable attorney's fee to the prevailing party as part of the cost."

17      In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994), the Supreme Court
18   held that in exercising its discretion to award attorney's fees to prevailing copyright
19   plaintiffs or defendants, courts should take an "even-handed" approach that treats
20   both sides equally.  The Supreme Court approvingly cited one circuit court's
21   consideration, as nonexclusive factors, of the losing party's "frivolousness,
22   motivation, objective unreasonableness (both in the factual and in the legal
23   components of the case) and the need in particular circumstances to advance
24   considerations of compensation and deterrence."  Id. at 534, n.19, citing *Lieb v.*
25   *Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986).

26      Here, plaintiff has clearly pursued a frivolous, objectively unreasonable suit
27   for an improper motivation.  It has long known that Le Château is not subject to
28   jurisdiction or venue in California.  It has also long known that Le Château has not

04211.23238/3895391.6

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1  committed any act of copyright infringement in the United States. It had no reason
2  to conclude that because an affiliate had sold 77 garments in New York, the parent
3  could be subject to liability in California. Moreover, plaintiff's counsel candidly
4  admitted that plaintiff conducted *no* pre-litigation investigation. In plaintiff's
5  counsel's own words, counsel were simply "imagining" that some act of
6  infringement "might have occurred here because plaintiff is located here."[19] But
7  even if plaintiff had not asked in such manner, an award of attorney's fees would be
8  appropriate. Indeed, the 9th Circuit affirmed an award of $1,374,519 made to a
9  prevailing defendant in an action in which the plaintiff was *not* blameworthy. *See*
10 *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 555 (9th Cir. 1996).

11        Because an evidentiary hearing is ordinarily required to determine the amount
12 of any attorney's fee award, *see Crescent Publishing Group v. Playboy Enterprises,*
13 *Inc.*, 246 F.3d 142, 147 (2d Cir. 2001), Le Château respectfully requests that the
14 Court award it attorney's fees in an amount to be determined upon further briefing.

### Conclusion

16        For the reasons set forth above, Le Château respectfully requests that its
17 motion be granted in all respects.

18
19 DATED: January 11, 2011          QUINN EMANUEL URQUHART &
20                                  SULLIVAN, LLP
21
22                                  By
23                                     David W. Quinto
24                                     Attorneys for Defendant
25                                     Le Château, Inc.
26
27  [19]   Quinto Dec., ¶ 4.
28

-12-