1  Stephen M. Doniger (SBN 179314)
2  stephen@donigerlawfirm.com
   Scott A. Burroughs (SBN 235718)
3  scott@donigerlawfirm.com
4  DONIGER / BURROUGHS APC
   300 Corporate Pointe, Suite 355
5  Culver City, California 90230
   Telephone: (310) 590-1820
6  Facsimile:   (310) 417-3538
7  Attorneys for Plaintiff

8
                    **UNITED STATES DISTRICT COURT**
9
                    **CENTRAL DISTRICT OF CALIFORNIA**
10

11 | L.A. PRINTEX INDUSTRIES, INC., | CV 10-4264 ODW (FMOx)
12 |                                | _The Honorable Otis D. Wright II Presiding_
   | Plaintiff,                     |
13 |                                | **SUPPLEMENTAL BRIEFING ON**
   | v.                             | **COURT-ORDERED ISSUES;**
14 |                                | **DECLARATION OF SCOTT A.**
   | LE CHATEAU, INC., et al.,      | **BURROUGHS**
15 |                                |
   | Defendants.                    |
16
17
18
19
20
21
22
23
24
25
26
27
28
                                   1
                          SUPPLEMENTAL BRIEFING

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **Contents**

INTRODUCTION AND STATEMENT OF FACTS .................................................5

ARGUMENT .............................................................................................................7

    (1)    LCI violated 17 U.S.C. § 106 ...........................................................8

    (2)    LCI is secondarily liable for copyright infringement ...........................10

        (a)    Vicarious liability must be found ...............................................10

        (b)    Contributory liability must be found .........................................13

DECLARATION OF SCOTT A. BURROUGHS, ESQ. ..........................................17

SUPPLEMENTAL BRIEFING

1

## **Table of Authorities**

2

3

<u>Cases</u>

4

*Broadcast Music, Inc. v. Hartmarx Corp.*, 9 U.S.P.Q.2d 1561, 1562, 1988 WL
    128691 (N.D.Ill.1988) ...................................................................................12

5

*Cable/Home Communication Corp. v. Network Prods., Inc.* 902 F.2d 829, 846 (11th
    Cir. 1990)..............................................................................................9, 13

6

7

*Columbia Pictures Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160-61 (3d Cir.1984) 11

8

*Fortnightly Corp. v. United Artists Television, Inc.*, 392 U.S. 390, 396-97, 88 S.Ct.
    2084, 2087-88, 20 L.Ed.2d 1176 (1968) ......................................................14

9

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1553 (9th Cir.
    1989)...........................................................................................................11

10

*GB Marketing USA, Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763,
    773 (W.D.N.Y 991)......................................................................................10

11

12

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159,
    1162 (2nd Cir.1971) ..............................................................................10, 13

13

*Itsi TV Productions v. Cal. Auth. of Racing Fairs*, 785 F. Supp. 854, 860 (E.D. CA
    1992).......................................................................................................8, 13

14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 US 913, 930-931 (2005)
    .................................................................................................................10

15

16

*Peter Pan Fabrics, Inc. v. Acadia Company*, 173 F.Supp. 292, 298
    (S.D.N.Y.1959), *aff'd*, 274 F.2d 487 (2d Cir. 1960) ......................................12

17

18

*RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 781 (8th Cir.1988)11

19

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.,* 256 F.Supp. 399,
    403 (S.D.N.Y.1966) ....................................................................................10

20

Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir.1963) ...11,
    13

21

22

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S.Ct.
    774, 785 n. 17, 78 L.Ed.2d 574 (1984) .........................................................9

23

*Southern Bell Tel. & Tel. v. Association Tel. Directory*, 756 F.2d 801, 811 (11th
    Cir.1985)....................................................................................................10

24

25

*Subafilms, Ltd. v. MGM-Pathe Communications, Co.*, 24 F. 3d 1088, 1093(9th Cir.
    1994).............................................................................................................8

26

27

28

1

<u>Statutes</u>

2

17 U.S.C. § 106.......................................................................................................8, 9

3

17 U.S.C.A. § 602(a) .................................................................................................15

4

<u>Other Authorities</u>

5

David Nimmer & Melville B. Nimmer, Nimmer on Copyright §12.04A (2005) at
        12-71-72 .....................................................................................................8, 10

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPPLEMENTAL BRIEFING

**INTRODUCTION AND STATEMENT OF FACTS**

On March 1, 2011, this Court ordered the parties to conduct discovery and submit supplemental briefing in regard to the following issues:

(1)     the proper parties in this case;
(2)     where these parties are domiciled;
(3)     the nature and extent of the relationship between or among these parties; and
(4)     the nexus of those parties to Plaintiff's theories of liability.

Prior to this order, on February 11, 2011, Plaintiff L.A. Printex Industries, Inc. ("L.A. Printex") had served written discovery requests. Burroughs Decl. ¶1. Le Chateau, Inc. ("LCI") submitted responses to these requests, but said responses lacked substantive information. Id.; Exs. 2,3. These responses indicated documents would be produced, but no documents were produced with the responses. Id. Despite repeated requests, LCI has refused to supplement its responses or produce the documents it states in its discovery responses it would produce[1]. Id.

On April 7, 2011, Plaintiff requested available deposition dates for LCI. LCI responded that it could not appear until April 21, 2011 – two business days prior to this briefing being due. Burroughs Decl. ¶2. Plaintiff's counsel requested an earlier date, and LCI's counsel represented in writing that it would provide a response to this request. Id.; Ex. 1. LCI did not do so. Id.

In spite of the above misconduct, LCI has produced responses sufficient to establish its liability. These admissions make clear that it is liable for copyright infringement, as follows:

---

[1] As Plaintiff's counsel was drafting this brief, he received an e-mail from defense counsel with an attachment – that attachment was not discovery documents, but was instead a proposed protective order. It is unclear why this proposed protective order was provided instead of documents, especially given that defense counsel is aware that Plaintiff's brief is due today. It appears to be an attempt to impede Plaintiff's ability to present its case.

LCI has admitted that it "controls" "Chateau Stores." ("Chateau") Ex. 3, Nos. 14, 20. It has conceded that it own 100 percent of the equity in Chateau, and that the LCI and Chateau share their executives. Ex. 2 Nos. 12, 13. It has conceded that no other party has any ownership in "Chateau Stores." Ex. 3, No. 16. LCI has also admitted that it has the authority to create company policy for "Chateau Stores."  Id., No. 18.

It has conceded that LCI is the party responsible for designing the product at issue (Ex. 2, No. 20), and providing said product to its subsidiary, Chateau. Id., No. 9.  It concedes that it provided these bags and garments to Chateau in the United States. Id., No. 10. It has also LCI provided and shipped the product at issue in this case to Chateau. Ex. 3, Nos. 21, 22. LCI admits that it distributed at least 77 garments and 14 handbags to Chateau in the United States. Id. (No. 9). The sale of these items by Chateau in the United States are directly infringing acts.

Tellingly LCI has refused to provide a response to the following requests:

"State the parameters of the relationship between YOU and "Chateau Stores," including without limitation, the management structure for your subsidiaries, distribution arrangements, and advertising programs." Ex. 2, No 21.

and

"Describe any and all activity through which YOU consult, advise, and/or exert influence on "Chateau Stores" internal affairs." Id., No 23.

and

"State any and all interactions LCI engages in relative to "Chateau Stores," including without limitation, the implementation of policies for, the floor design of, distribution of product for and purchase of product for, "Chateau Stores" Id., No. 24.

The Court may draw an adverse inference from this refusal to respond.

6

As set forth above, LCI controls and operates "Chateau Stores," and was directly involved in creating, distributing and providing the product at issue in this case to this company, its wholly-owned subsidiary. There is no question that LCI is liable for copyright infringement.

So owing, Plaintiff responds to each of the Court's questions as follows:

(1)     the proper parties in this case:

LCI is a proper party in this case. As discussed below, LCI is liable for the infringement of its subsidiary that operates in the United States. This subsidiary, Chateau Stores, Inc. ("Chateau"), is also a relevant party. Plaintiff requested leave to add this party after LCI disclosed it in discovery (LCI concealed this name when filing its Notice of Interested Parties at the inception of this case), but LCI refused.

(2)     where these parties are domiciled:

LCI is domiciled in Canada, and Chateau is domiciled in New York. It appears that LCI has abandoned its personal jurisdiction argument. As such, this case should proceed in California.

(3)     the nature and extent of the relationship between or among these parties:

As discussed below, LCI wholly owns and controls Chateau.

(4)     the nexus of those parties to Plaintiff's theories of liability.

As discussed below, LCI is liable because it wholly owns and controls Chateau and was substantially involved in the infringing acts at issue.

**ARGUMENT**

LCI's motions have been stricken by the Court. In its reply in support of its motion for summary judgment, LCI abandoned all arguments made in its moving papers and asserted only that it is not liable for copyright infringement because the

infringing acts were committed by LCI's wholly-owned subsidiary, Chateau.  This assertion fails for a number of reasons:

### (1)    LCI violated 17 U.S.C. § 106

LCI has violated provision the Copyright Act. This Act prohibits not only acts of infringement, but also the **authorization** of infringing acts. 17 U.S.C. § 106. This provision establishes liability of a party that "does no more than cause or permit another to engage in an infringing act." 3 David Nimmer & Melville B. Nimmer, Nimmer on Copyright §12.04A (2005) at 12-71-72.

Such authorization is grounds for copyright liability. The 1909 Copyright Act was amended in1976 to add the words "to authorize" to 17 U.S.C. §106. "The addition of the words "to authorize" in the 1976 Act appears best understood as merely clarifying that the Act contemplates liability for contributory infringement, and that the bare act of "authorization" can suffice." *Subafilms, Ltd. v. MGM-Pathe Communications, Co*., 24 F. 3d 1088, 1093(9th Cir. 1994).

The legislative history of the 1976 Copyright Act confirms the above by stating in part:

> The exclusive rights accorded to a copyright owner under section 106 are "to do and to authorize" any of the activities specified in the five numbered clauses. Use of the phrase "to authorize" is intended to avoid any questions as to the liability of contributory infringers.

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 61, reprinted in 1976 U.S.C.C.A.N. 5659, 5674 (emphasis added).

Courts have interpreted this amendment to confirm the liability of a party that does not directly sell the infringing goods. *Itsi TV Productions v. Cal. Auth. of Racing Fairs*, 785 F. Supp. 854, 860 (E.D. CA 1992). ("Given the new language of the statute and the statute's legislative history it appears to this court that Congress created a new form of "direct" infringement when it amended the Act to include

1   the words "to authorize," and that individuals may be contributorily or vicariously

2   liable for such direct acts of infringement.")

3       The Court has confirmed the liability of a party that only authorizes or

4   permits an infringing act, finding that "Congress' use of the phrase `to authorize'

5   establishes the liability, whether vicarious or as a contributory infringer, of one

6   who does no more than cause or permit another to engage in an infringing act. […]

7   This position appears well-taken." Id., citations omitted.

8       Given the above, it is now settled law that "an infringer is not merely one

9   who uses a work without authorization by the copyright owner, but also one who

10  authorizes the use of a copyrighted work without actual authority from the

11  copyright owner." *Sony Corp. of America v. Universal City Studios, Inc*., 464 U.S.

12  417, 104 S.Ct. 774, 785 n. 17, 78 L.Ed.2d 574 (1984).

13      In its discovery responses, LCI concedes that it not only authorized the

14  infringing acts, but **directly contributed** to them by designing and providing the

15  infringing goods to Chateau. Specifically, LCI admitted that its designer, Shannon

16  Duchemin, is the party responsible for creating the product at issue in this case. Ex.

17  2, No. 20. It also admitted that it provided the product at issue to Chateau in the

18  United States. Id. No. 10; Ex. 3, Nos. 21, 22. In designing the infringing product

19  and providing it for Chateau to sell to the public in the United States, LCI has

20  clearly authorized or permitted Chateau to commit copyright infringement. This

21  goes far beyond what is required by 17 U.S.C. §106.

22      In addition, LCI took action outside of the United States – designing and

23  shipping the infringing goods – that resulted in infringement within the United

24  States – the sales of the infringing goods by Chateau. This conduct alone is

25  sufficient to establish LCI's liability for copyright infringement. *Cable/Home*

26  *Communication Corp. v. Network Prods., Inc*. 902 F.2d 829, 846 (11th Cir.

27  1990)(defendants were held liable for copyright infringement for acts that took

28

9

1   place outside of the U.S. that resulted in infringement within the U.S. borders); <u>see</u>
2   <u>also</u> *GB Marketing USA, Inc. v. Gerolsteiner Brunnen GmbH & Co*., 782 F. Supp.
3   763, 773 (W.D.N.Y 1991)(holding actionable acts that occurred in Germany that
4   were intended to produce an effect in the U.S.).

5        Given the above, LCI is liable for copyright infringement.

6        *(2)   LCI is secondarily liable for copyright infringement*

7        LCI is liable for the second count included in the operative complaint –
8   contributory and/or vicarious liability. These are two separate grounds on which
9   liability must be found. Vicarious liability is grounded in the tort concept of
10  respondeat superior, *Gershwin Publishing Corp. v. Columbia Artists Management,*
11  *Inc.,* 443 F.2d 1159, 1162 (2nd Cir.1971), while contributory liability has evolved
12  from the tort concept of enterprise liability. *Id.; Demetriades,* 690 F.Supp. at 292-
13  93; *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.,* 256 F.Supp. 399,
14  403 (S.D.N.Y.1966).

15       *(a)   Vicarious liability must be found*

16       LCI is liable for vicarious infringement because it "profit[ed] from direct
17  infringement while declining to exercise a right to stop or limit it." *Metro-*
18  *Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 US 913, 930-931 (2005). The
19  directly infringing activity in this case was the purchase, distribution, and sales of
20  the infringing product by Chateau in the United States. LCI profited from
21  Chateau's sales because Chateau is a wholly-owned subsidiary of LCI that LCI
22  controls and for which LCI creates policy. LCI is thus vicariously liable for
23  Chateau's infringement.

24       Specifically, a parent company may be vicariously liable for the infringing
25  acts of another when two prerequisites are met: (1) the defendant has the right and
26  ability to supervise the infringing activity of another; and (2) the defendant has an
27  obvious and direct financial interest in exploitation of the copyrighted materials.

28

1  *Gershwin*, 443 F.2d at 1161-62; see also *Southern Bell Tel. & Tel. v. Association*

2  *Tel. Directory*, 756 F.2d 801, 811 (11th Cir.1985); *RCA/Ariola Int'l, Inc. v.*

3  *Thomas & Grayston Co.*, 845 F.2d 773, 781 (8th Cir.1988); *Columbia Pictures*

4  *Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160-61 (3d Cir.1984); Shapiro, Bernstein

5  & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir.1963).

6  The  9th Circuit clearly endorses this approach. *Frank Music Corp. v. Metro-*

7  *Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1553 (9th Cir. 1989) *cert. denied*, 494 U.S.

8  1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990) (parent corporation may be liable

9  for infringement committed by its subsidiary if there is a substantial and continuing

10  connection between the two with respect to the infringing acts).

11  It is important to note that for purposes of vicarious liability, one **need not**

12  **have knowledge** that the direct infringer is engaging in infringing conduct to be

13  held vicariously liable. *Gershwin*, 443 F.2d at 1162 ; 3 Nimmer § 12.04[A], at 12-

14  63 n. 14 (collecting cases).

15  LCI has admitted that it has a direct relationship with Chateau – indeed, it

16  conceded it wholly owns Chateau, shares executives with Chateau, and has the

17  right to exercise control over Chateau's policies – and has further admitted that

18  LCI designed and provided to Chateau the bags at issue in this case. As set forth

19  above, it is irrelevant whether LCI knew that Chateau's sales were infringing. As

20  such, LCI is vicariously liable for Chateau's sales of the infringing product in the

21  United States.

22  Indeed, one court has explicitly held that the legal relationship between

23  parent and subsidiary, **by itself**, always satisfies the test for vicarious

24  infringement[2]. *Broadcast Music, Inc. v. Hartmarx Corp.*, 9 U.S.P.Q.2d 1561, 1562,

25  _____

26  [2] The Broadcast Music Court stated, "We also find as a matter of law that [the
parent] has the right and ability to supervise its subsidiaries — that is, to guard

27  against or police the allegedly infringing activity. Our conclusion rests in part on

28  the legal relationship between [the parent] and its subsidiaries. Because [the

11

1988 WL 128691 (N.D.Ill.1988). In other words, even if the parent was not involved in the infringing acts of its subsidiary, the parent would still be vicariously liable.

Here, the parent corporation was **directly** involved in the subsidiary's infringing conduct. This involvement is all but dispositive on the question of vicarious liability. *Frank Music Corp.,* 110 S.Ct. 1321, 108 L.Ed.2d 496 (a parent will be vicariously liable for the infringing acts of a subsidiary if "there is a substantial and continuing connection between the two with respect to the infringing acts."); *Peter Pan Fabrics, Inc. v. Acadia Company*, 173 F.Supp. 292, 298 (S.D.N.Y.1959), *aff'd*, 274 F.2d 487 (2d Cir. 1960) (finding vicarious liability because "[t]he cumulative proof points ... to the conclusion that [the parent] was substantially connected with the infringing transaction and the course of conduct sought to be enjoined.").

In *Blue Ribbon Pet Products v. Rolf C. Hagen*, for example, the court held a Canadian parent company secondarily liable for its subsidiary's infringement of copyrighted materials when the parent company had oversight and involvement with the subsidiary.  66 F. Supp. 2d 454 (E.D.N.Y. 1999).

---

parent] owns a controlling interest in the subsidiaries, it elects the Board of Directors, who in turn select each subsidiary's officers. Control over the Board, then, in effect equals control over the subsidiaries' officers. Since the officers run the day-to-day affairs of the subsidiary, control of those officers in turn equals the right to control even the day-to-day matters of the subsidiary. Though [the parent] makes much of the fact that it merely makes "recommendations" to the subsidiaries' CEOs and that the CEOs do not always comply, it cannot be disputed that if a CEO refuses to "cooperate," [the parent] can simply, through its power over the Board, have her removed. Thus, it is clear to us that [the parent] has the right to supervise its subsidiaries' activities — down to a subsidiary's unlicensed use of copyrighted music — through its power to remove recalcitrant officers. It is the existence of the right to supervise, not whether [the parent] in fact chose to exercise that right, that is at issue." 9 U.S.P.Q. at 1562.

1    The same is true here. It is undisputed that LCI had a "substantial and
2    continuing connection" with Chateau in regard to the infringing acts. Indeed, LCI
3    has admitted that it "controls" Chateau, that it has the power to dictate Chateau's
4    policies, and that it provided the goods to Chateau whose sales in the United States
5    **were** the infringing acts. As such, LCI must be found vicariously liable for
6    Chateau's infringing acts.

7                    *(b)     Contributory liability must be found*

8        A defendant may be contributorily liable if it intentionally induces or
9    encouraging direct infringement. *Gershwin,* 443 F. 2d 1159, 1162 (CA2 1971);
10   *Shapiro, Bernstein & Co. v. H. L. Green Co*., 316 F. 2d 304, 307 (CA2 1963). This
11   happens when "with knowledge of the infringing activity, [the defendant] induces,
12   causes, or materially contributes to the infringing conduct of another." *Itsi TV*
13   *Productions*, 785 F. Supp. at 861, citing *Gershwin*, 443 F.2d at 1162; *see also*
14   *Cable/Home Communication v. Network Productions*, 902 F.2d 829, 845-46 (11th
15   Cir.1990).

16       "The standard of knowledge is objective: to know or have reason to know
17   that the product in question is copyrighted and that defendants were violating the
18   copyright laws." *Cable/Home*, 902 F.2d at 845-46. In this case, LCI has admitted
19   that it has no evidence at all that it created the design on the product at issue, and
20   no evidence at all that it obtained the right to use said design in commerce. Despite
21   the foregoing, LCI designer Shannon Duchemin exploited the design, using it to
22   embellish and decorate LCI handbags and garments, and then shipped those
23   products to Chateau in the United States. Objectively, LCI had reason to know –by
24   virtue of the fact that it knew it had no rights to use the design, yet used to it
25   anyway – its use of the design was infringing. As such, this element of
26   contributory liability has been established.

27
28

SUPPLEMENTAL BRIEFING

The other element – contribution – can also be met: LCI contributed to the infringement by designing and providing the infringing product. This greatly exceeds the "mere quantitative contribution" to the primary infringement that is required. *Gershwin*, 443 F.2d at 1162 (quoting *Fortnightly Corp. v. United Artists Television, Inc.*, 392 U.S. 390, 396-97, 88 S.Ct. 2084, 2087-88, 20 L.Ed.2d 1176 (1968). Given the above, LCI is liable for contributory infringement.

### (3)    *LCI is liable as an alter ego of Chateau*

LCI is also liable as the "alter ego" of Chateau[3]. One entity is considered the "alter ego" of a corporation when the entity so dominates the corporation and completely disregards the corporation's separate identity that the entity primarily transacts its own business rather than that of the corporation. *See Thomson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 777 (2d Cir.1995); *Gartner v. Snyder,* 607 F.2d 582, 586 (2d Cir.1979).

Determining whether an alter ego relationship exists is a fact-specific inquiry that varies depending upon the totality of circumstances. *Thomson-CSF,* 64 F.3d at 777-78; *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). Relevant factors to consider include whether the entities share a common office and staff, are run by common officers, intermingle funds, fail to deal at arms' length with each other, and are not treated as separate profit centers. *Wm. Passalacqua Builders Inc. v. Resnick Developers S., Inc.,* 933 F.2d 131, 139 (2d Cir.1991).

---

[3] Plaintiff names Does 1-10 in the complaint, and in paragraph 8 alleges that "each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, and and all of the acts or conduct alleged, with full knowledge of each and every violation of Plaintiff's rights and damages to Plaintiff proximately caused thereby."

14

1    A wholly-owned subsidiary's contacts may be imputed to the parent where
2    the subsidiary was "either established for, or is engaged in, activities that but for
3    the existence of the subsidiary, the parent would have to undertake itself. *Chan v.*
4    *Society Expeditions, Inc.*, 39 F.3d 1398, 1405-1406 (9th Cir. 1994). If the Chateau
5    subsidiary did not exist, LCI would have had to directly sell the garments and bags
6    at issue. This is sufficient to impute liability.
7    Even if it weren't, LCI has admitted that it wholly-owns Chateau, that LCI
8    and Chateau share a common staff, that LCI controls Chateau, and that LCI has the
9    authority to dictate Chateau's policies. This meets the requirements for alter ego
10   liability to apply.

11   ### 4.    *Direct infringer need not be named*

12   Defendants also argue that Plaintiff's complaint fails because it does not
13   allege a direct infringement against Chateau. No such requirement exists: "it is
14   permissible for a plaintiff to to name as a defendant solely a contributory infringer
15   or one vicariously liable […]" Nimmer §1204[A][3][a] 12-89 (1994); citing
16   *Danjaq, S.A. v. MGM/UA Communications Co.*, 773 F. Supp. 194 (C.D. 1991)( a
17   plaintiff need not name the direct infringer as a defendant), *Sony Corp. v.*
18   *Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984)(direct infringer does not
19   need to be named as a defendant).

20   ### 5.    *Extraterritorial acts render LCI liable for infringement*

21   LCI is liable for unlawfully importing the infringing bags and garments that
22   it has conceded it provided to Chateau in the United States. *Subafilms, Ltd.,* 24 F.
23   3d 1088 at 1096, citing 17 U.S.C.A. § 602(a) ("We note that Congress chose in
24   1976 to expand one specific "extraterritorial" application of the Act by declaring
25   that the unauthorized importation of copyrighted works constitutes infringement
26   even when the copies lawfully were made abroad"). This is a separate ground on
27   which LCI should be found liable for copyright infringement.

28

**CONCLUSION**

Given the above, it is clear that LCI is liable for the infringing acts at issue in this case on a number of different bases. Plaintiff submits that this case should proceed to trial in California; or, in the alternative, and should the Court find it to be proper, it should be transferred to New York as indicated in the previously-submitted papers[4].

Respectfully submitted,


Dated: April 25, 2011          By:   /s/ Scott A. Burroughs
                                     Scott A. Burroughs, Esq.
                                     DONIGER / BURROUGHS
                                     Attorneys for Plaintiff
                                     L.A. Printex Industries, Inc.

---

[4] Plaintiff submits that LCI, by filing and then withdrawing a motion challenging personal jurisdiction, has waived this argument and its ability to challenge personal jurisdiction in this matter.

16

SUPPLEMENTAL BRIEFING

## DECLARATION OF SCOTT A. BURROUGHS, ESQ.

I, Scott A. Burroughs, Esq., declare that I am at least 18 years old and am competent to make the testimony set forth below.  I am a shareholder at DONIGER / BURROUGHS APC, attorneys for Plaintiff in this action. If called as a witness I could and would competently testify as follows:

1.      On February 11, 2011, Plaintiff had served written discovery requests. LCI submitted responses to these requests, but said responses lacked substantive information. I have attached as Exhibit 2 a true and correct copy of LCI's interrogatory responses, and as Exhibit 3 a true and correct copy of LCI's request for admission responses. These responses indicated documents would be produced, but no documents were produced with the responses. Despite repeated requests, LCI has refused to supplement its responses or produce the documents it states in its discovery responses it would produce[5].

2.      On April 7, 2011, I requested available deposition dates for LCI. LCI responded that it could not appear until April 21, 2011 – two business days prior to this briefing being due. I requested an earlier date, and LCI's counsel represented in writing that it would provide a response to this request. LCI did not do so. I have

///

///

_____

[5] As I was drafting this brief, I received an e-mail from defense counsel with an attachment – that attachment was not discovery documents, but was instead a proposed protective order. It is unclear why this proposed protective order was provided instead of documents, especially given that defense counsel is aware that Plaintiff's brief is due today. It appears to be an attempt to impede Plaintiff's ability to present its case.

attached as Exhibit 1 a true and correct copy of an e-mail confirming this agreement.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 25th Day of April, 2011, at Culver City, California.

By:   /S/ Scott A. Burroughs
       Scott A. Burroughs, Esq.

SUPPLEMENTAL BRIEFING