Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs (SBN 235718)
scott@donigerlawfirm.com
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile:   (310) 417-3538
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. PRINTEX INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> LE CHATEAU, INC., et al., <br><br> Defendants. | CV 10-4264 ODW (FMOx) <br> _The Honorable Otis D. Wright II Presiding_ <br><br> **OPPOSITION TO DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT; DECLARATION OF SCOTT A. BURROUGHS; DECLARATION OF JAE NAH** <br><br> Defendant's 2nd Motion for Summary Judgment <br> Date: May 23, 2011 <br> Time:  1:30 p.m. <br> Courtroom:  11 |

1

# <u>Table of Contents</u>

2

THIS MOTION MUST BE DENIED ................................................................5

STATEMENT OF FACTS .............................................................................7

ARGUMENT...............................................................................................10

    1.    9th Cir. precedent requires a presumption of validity; this presumption   has not been rebutted ....................................11

    2.    The Pro-IP Act requires a finding of validity .......................14

    3.    The Authorities Cited by LCI are Wholly Inapposite .........16

    4.    There was no discovery misconduct....................................17

    5.    The "de minimis" argument is frivolous...............................18

    6.    Fees would not be appropriate because argument is not as to merits....................................................................................19

CONCLUSION...........................................................................................19

DECLARATION OF JAE NAH ..................................................................20

DECLARATION OF SCOTT A. BURROUGHS, ESQ...............................21

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **Table of Authorities**

2

3

## **Cases**

4

*Brown v. Tabb*, 714 F.2d 1088, 1091-92 (11th Cir.1983) ......................................17

*Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598 (2001) .......................................................19

*Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161–62 (1st Cir. 1994) .............................................................................................................13

*Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980) ...........11

*Eckes v. Card Price Update*, 736 F.2d 859, 861-62 (2d Cir. 1984) .......................13

*Fonar Corp. v. Domenick*, 105 F.3d 99, 106 (2d Cir. 1997) ..................................11

*Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) ..................................11

*Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 US 539, 565 (1985)..18

*Hearst Corp. v. Stark*, 639 F. Supp. 970, 974 (N.D. Cal. 1986) ............................12

*Jedsen Engineering, Inc. v. Spirit Construction Services, Inc*., 720 F. Supp. 2d 904 (S.D. Ohio 2010) ...................................................................................12

*Jules Jordan Video, Inc. v. 144942 Canada Inc*., 617 F.3d 1146, 1156 (9th Cir. 2010) .............................................................................................................14

*L.A. Printex v. Aeropostale* ...................................................................................16

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co*., 345 F.3d 1140, 1144-45 (9th Cir. 2003) .............................................................................................................11

*Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) ..............................12

*Masquerade Novelty, Inc. v. Unique Indus., Inc*., 912 F.2d 663, 668 n.5 (3rd Cir. 1990) .............................................................................................................13

*N. Coast Indus. v. Jason Maxwell, Inc*., 972 F.2d 1031, 1033 (9th Cir. 1992).......11

*R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39 (S.D.N.Y. 2009) ........................11

*Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc*., 482 F. Supp. 980, 988 (D.C.N.Y. 1980) .............................................................................................................13

*S.O.S., Inc. v. Payday, Inc*. 886 F.2d 1081, 1085 (9th Cir. 1989) .........................11

*Sheldon v. Metro-Goldwyn Pictures Corp*., 81 F. 2d 49, 56 (CA2), *cert. denied*, 298 U. S. 669 (1936) .....................................................................................18

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486-87 (9th Cir. 2000).............12

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1258 (9th Cir. 2011) ....................................................................................................passim

*Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997)..........................12

## **Statutes**

17 U.S.C. § 410(c) ............................................................................11, 15

17 U.S.C. § 411(b)(2) ................................................................................16

2 NIMMER ON COPYRIGHTS, § 7.20, 7-148.1 (1985) ........................................12, 13

Nimmer § 13.03[A], at 13-27 ...................................................................18

Nimmer, § 7.20 ............................................................................12, 14

Nimmer, § 7.20[B]..................................................................................13

Paul Goldstein, COPYRIGHT § 3.12.3, at 345 (1989).........................................14

1

**THIS MOTION MUST BE DENIED**

2

There is no merit to this motion. It is the *second* summary judgment motion

3

filed by Defendant, Le Chateau, Inc. ("LCI") in an attempt to avoid liability for

4

knocking off Plaintiff L.A. Printex Industries, Inc.'s ("PRINTEX") proprietary

5

textile design[1]. Tellingly, none of these motions argue that LCI didn't sell

6

infringing product; rather, they each attempt to avoid liability via a technicality[2].

7

LCI does not argue the merits because on the merits it clearly loses. The

8

evidence reveals that PRINTEX owns the design, and LCI did not create or obtain

9

a license to use the design on the garments and the handbags at issue. It also shows

10

that LCI submitted a perjurious declaration through which it denied selling

11

handbags bearing the design at issue.

12

A review of the designs themselves reveals that the LCI product bears a

13

near-verbatim knock-off of the PRINTEX design. Each and every element of the

14

design on the LCI product is copied from the PRINTEX design and the designs

15

employ the exact same color scheme.

16

There is no question that the design on the LCI garments and handbags was

17

copied from the PRINTEX design. A review of the images makes this clear.

18

Below, on the left, is the PRINTEX design. Below, on the right, is a close-up of the

19

design on the LCI product. This comparison reflects the obvious copying:

20

21

[1] LCI also filed a Motion for Rule 11 sanctions based on the jurisdictional argument that it has now abandoned. This Motion was stricken by the Court as without basis.

22

23

24

[2] The meet and confer section of LCI's motion is just plain wrong. LCI initially argued that its motion would be based on the District Court's ruling in *United Fabrics  v. C&J Wear.* We indicated that this ruling had been overturned by the 9th Circuit, and any motion based on the District Court's ruling would be a violation of Rule 11. Despite this knowledge, LCI went forward with this motion. At no point did counsel to LCI call to meet and confer as required by L.R. 7-3, and he gives no reason why he violated that rule.

25

26

27

28

5

1

PRINTEX DESIGN                LCI DESIGN

2

 

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17    Cognizant of its clear liability, LCI has attempted to avoid accountability by

18    filing technical and procedural challenges. LCI first motion argued that personal

19    jurisdiction did not exist. After Plaintiff filed its opposition, LCI *abandoned* the

20    personal jurisdiction argument – formally withdrawing it in its reply papers. In

21    those same reply papers it then attempted to argue that it was not responsible for

22    the infringing sales of its wholly-owned subsidiary, Chateau Stores. Because it is

23    wholly improper to switch arguments in one's reply papers, the Court found this

24    motion to be withdrawn in its entirety.

25    Even if it hadn't, the argument made by LCI in its reply papers is frivolous,

26    as explained in full in PRINTEX's supplemental briefing. See U.S.D.C. Dkt No.

27    44. Now, LCI has filed an additional meritless summary judgment motion. This

28

6

motion makes a hyper-technical argument regarding the validity of the copyright registration. Per recent 9th Circuit authority, this argument necessarily fails[3].

## **STATEMENT OF FACTS**

L.A. Printex discovered that LCI was selling garments and handbags bearing a knock-off of one of its fabric designs in the United States. Nah Decl. ¶2, Ex.1. Specifically, LCI was caught selling **three** different infringing products in its "Le Chateau" stores in New York – a handbag or tote, a dress, and a jacket. Id. Further investigation revealed that LCI was selling additional infringing product in the form of skirts and dresses online and in its stores in Canada. Id.

Eric Poulin, the Director of International Development for LCI, has submitted a declaration under the penalty of perjury that states under oath that LCI distributed and sold no more than 77 units of four models of *garments* bearing the design at issue. LCI Motion for Summary Judgment I, 3:19-20; Declaration of Eric Poulin, dated January 11, 2011; ¶¶4-5. U.S.D.C. Dkt. No. 22. This declaration is demonstrably false given that LCI *also sold handbags* bearing the design. In addition, Plaintiff has information indicating that LCI sold more than four different products bearing the knock-off print.

The graphic design at issue was and is owned by Plaintiff and registered with the U.S. Copyright Office. Nah Decl.¶3, Ex. 2. Plaintiff discovered that the garments and handbags at issue in this case ("Infringing Product') had been manufactured by LCI in Canada, and then sold at LCI retail stores in Canada and the United States. Burroughs Decl. ¶2. Plaintiff also discovered that LCI had imported the Infringing Product – all of which bore a tag reading "le chateau" – into the United States in violation of 17 U.S.C. §602. Burroughs Decl. ¶3.

---

[3] In an attempt to mislead the Court, LCI refers repeatedly to a district court decision that has since been overruled by the 9th Circuit. This is in bad faith and a violation of Fed.R.Civ.P. 11.

LCI is a vertically integrated company, with a division that manufactures and imports the garments, and a division that sells these garments through retail stores. Burroughs Decl. ¶4. In this case, LCI eventually conceded that it had manufactured the Infringing Garments under the "le chateau" brand, labeled each garment with a "le chateau" tag, and then imported them into the United States. In the United States, it distributed the "le chateau" Infringing Garments to its "Le Chateau"-branded retail stores. Ex. 2. Its retail stores then sold the Infringing Garments to the public. Id.

As discussed herein, LCI violated the U.S. Copyright Act by importing the Infringing Product, and distributing same to it its network of retail stores. Thereafter, LCI, and/or its affiliate, Chateau Stores[4], violated the U.S. Copyright Act by selling the Infringing Garments to the public in stores operating under the name "Le Chateau." As discussed in PRINTEX's supplement briefing, LCI is also contributorily and vicariously liable for Chateau Stores' sales of the Infringing Garments. U.S.D.C. Dkt. No. 44.

LCI conceded that it had imported and sold 77 garments in the United States; viz., New York state. LCI Motion for Summary Judgment I, 3:19-20; Declaration of Eric Poulin, dated January 11, 2011; ¶¶4-5. This, it claimed, was the extent of Infringing Product sold by LCI in the United States. As is evident from Exhibit 1, LCI sold not only garments that infringed Plaintiff's designs, but handbags as well. While LCI's declaration under the penalty of perjury states that only 77 units were sold in the United States, those units are referred to as "garments." This declaration is clearly false, as handbags were also sold by LCI in the U.S.

---

[4] LCI would be vicariously and contributorily liable for the sales by its wholly-owned subsidiary.

Further evidence of its falsity is the fact that no less than three different models of Infringing Product were sold by LCI, and the Poulin Declaration appears to address only one of those models. LCI apparently was of the belief that it could conceal its sales of these other products PRINTEX would be unable to unearth evidence of same. It was wrong.

Given this apparently fraudulent statement, and the dubious nature of the numbers provided, Plaintiff requested documents and evidence confirming the declared numbers and reflecting the party or source from which LCI obtained the design on the infringing garments. PRINTEX offered to resolve the case upon provision of these documents, and a written warranty relating to the sales numbers.

LCI refused to provide the documents to counsel in California, as these documents would have reflected the fraudulent nature of the declaration and the statement that only 77 units of Infringing Product were sold in the United States. To date, LCI has not produced a single document in discovery. Burroughs Decl. ¶5.

It also refused to identify its source for the design on the Infringing Product. Id. Though it is now making its second motion for summary judgment, it is still unwilling to make that representation.

In any event, despite the lack of cooperation in producing the documents, Plaintiff offered to resolve the case with LCI for $3,000.00, which was far less than the cost of investigating this particular infringement. Burroughs Decl. ¶6. The agreement then broke down over the language of the confidentiality provision. Id. PRINTEX has since attempted to resolve the case with LCI, but LCI has indicated it will not settle unless PRINTEX pays LCI's attorneys' fees. Burroughs Decl. ¶7. Given the clear liability of LCI for copyright infringement, this position was not reasonable. Id. Ex., 3.

1  LCI has now filed a new motion attacking the validity of PRINTEX's
2  registration. It does so without citing to a single piece of evidence, and provides
3  only abject speculation and falsehoods in support of its position. The motion fails,
4  as follows.

5  **ARGUMENT**

6  LCI's argument that PRINTEX's copyright is somehow invalid is wholly
7  without merit. The entire motion is predicated on a gross misunderstanding of
8  copyright law and the burden of proof in regard to challenging the validity of a
9  copyright registration. Specifically, the motion repeatedly states that a copyright
10  holder is responsible for proving, or presenting evidence of, the truth of the facts in
11  the registration. See LCI Motion, pg. 1, lns. 4-6 ("plaintiff **must show** that the
12  various works subject to the registration were in fact offered for sale *as a*
13  *collection*.")(bold added, italics in original) and pg. 3, lns. 9-11 ("plaintiff has
14  **failed to come forward with any evidence** that the textile design pattern subject
15  to its collective copyright registration were published *as a collection*)(bold added,
16  italics in original).

17  The opposite is actually true. *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,
18  630 F.3d 1255, 1258 (9th Cir. 2011) (defendants' argument that plaintiff provided
19  "no evidence" of validity of information in a copyright registration fails because
20  the copyright registration provides a presumption of validity that must be rebutted
21  by defendants). If a party challenging a registration's validity does not identify
22  specific evidence to challenge that validity, its challenge must fail. Id. at 1257.
23  (defendant's motion fails because "nowhere does it set forth facts that rebut the
24  presumption of validity to which [plaintiff's] copyright is entitled."). A copy of the
25  9th Circuit's Opinion is attached as Exhibit 4. Because LCI's motion suffers from
26  this defect – indeed, it does not even attempt to cite to any evidence to rebut the

27
28

presumption, arguing instead that PRINTEX must prove that for which it has a presumption – it must be denied.

> 1.   *9th Cir. precedent requires a presumption of validity; this presumption has not been rebutted*

There is no question that the registration for the Subject Design is valid. LCI argues that it is invalid because the works were not "published" together, but offers not a single citation to any piece of evidence to support this naked assertion. This is because no such evidence exists, and even if it did, it would not rebut the registration's presumption of validity because no fraud has been shown.

A certificate of registration made before or within five (5) years of first publication of the registered work is prima facie evidence of the validity of the copyright.  17 U.S.C. §410(c); *S.O.S., Inc. v. Payday, Inc*. 886 F.2d 1081, 1085 (9th Cir. 1989) (citing *Durham Industries, Inc. v. Tomy Corp*., 630 F.2d 905, 908 (2d Cir. 1980)).  It is also prima facie evidence of the validity of the facts stated in the certificate, including ownership, and shifts the burden to defendants to offer proof that these facts are false. 17 U.S.C. § 410(c); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co*., 345 F.3d 1140, 1144-45 (9th Cir. 2003); see also *N. Coast Indus. v. Jason Maxwell, Inc*., 972 F.2d 1031, 1033 (9th Cir. 1992) ("Under our copyright law, the registration of the copyright certificate itself establishes a prima facie presumption of the validity of the copyright in a judicial proceeding. . . .").

The information regarding publication that is set forth in a registration is entitled to this presumption of validity. *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39 (S.D.N.Y. 2009) (finding a single work registration for a group of approximately eighty jewelry designs to be valid because plaintiff was "entitled to a presumption of the copyright's validity; this presumption includes the preliminary determination by the Copyright Office that the [plaintiff's] collection was included in a single unit of publication."); *Fonar Corp. v. Domenick*, 105 F.3d

99, 106 (2d Cir. 1997)) ("[W]e think that a presumption of regularity and appropriateness in filing is ordinarily subsumed in the presumption of validity that attaches to a certificate of copyright registration").

This presumption requires the party challenging the registration prove that it is invalid *United Fabrics Int'l, Inc.,* 630 F.3d at 1258. (defendants' argument that plaintiff provided "no evidence" of validity of information in a copyright registration fails because the copyright registration provides a presumption of validity that must be rebutted by defendants); see also *Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999)(alleged infringer responsible for rebutting presumption).   In this case, there is no probative evidence to rebut the presumption of Plaintiff's ownership of a valid copyright.

To refute the validity of a copyright, the infringer must come forward with substantial evidence of fraud.  It is settled law that "inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless . . . the claimant intended to defraud the Copyright Office by making the misstatement."  *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997); accord *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486-87 (9th Cir. 2000); see also Nimmer, § 7.20 (absent fraud, "a misstatement or clerical error in the registration application . . . should neither invalidate the copyright nor render the registration certificate incapable of supporting the infringement action").  "A party seeking to establish a fraud on the Copyright Office, and thereby rebut the presumption of copyright validity, bears a heavy burden." *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) (citing Nimmer, § 7.20[B]).

At most, and without any evidence, LCI alleges only that PRINTEX made an error in the registration. An error in the publication section of the registration, in the absence of fraud, will not invalidate the registration. *United Fabrics Int'l, Inc.,*

630 F.3d at 1258 (rejecting argument that publication error is grounds for invalidating a registration, and stating that "[defendant] cites no authority that such facts rebut the presumption of copyright validity.")[5].

This is in accord with the authority. Courts have traditionally treated innocent errors contained in an application for a registration certificate with leniency. Nimmer, § 7.20[B], n.18. It is all but settled law that an inadvertent error, even if material, will never preclude a copyright infringement action where the work would have been accepted for registration if the application for the material contained a correct statement of facts. *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3rd Cir. 1990) ("that an inadvertent omission from a registration application will render a plaintiff's copyright incapable of supporting an infringement action has not gained acceptance with the courts"); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161–62 (1st Cir. 1994) ("It is well established that immaterial, inadvertent, errors in an application for copyright registration do not jeopardize the validity of the registration"); *Eckes v. Card Price Update*, 736 F.2d 859, 861-62 (2d Cir. 1984) ("Only the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid'") (quoting *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980, 988 (D.C.N.Y. 1980)); Nimmer, § 7.20[B], n.19 (a misstatement in the registration

_____

[5] Also, in *Jedsen Engineering, Inc. v. Spirit Construction Services, Inc.*, 720 F. Supp. 2d 904 (S.D. Ohio 2010), the court refused to invalidate a registration on the basis of a putative error in the publication entry, finding the publication entry error was not a material misstatement, and would not affect validity.  Similarly, the court in *Hearst Corp. v. Stark*, 639 F. Supp. 970, 974 (N.D. Cal. 1986) specifically rejected defendants' challenge based on an incorrect publication date, because "[m]isstatements or errors in a registration application, unless by fraud, do not invalidate the copyright or render the registration certificate incapable of supporting an infringement action." (citing 2 NIMMER ON COPYRIGHTS, § 7.20, 7-148.1 (1985)).

1    application does not "render the registration certificate incapable of supporting an

2    infringement action").

3         This doctrine of leniency in connection with registration formalities is so

4    established that most well-known treatises in the field adopt it unequivocally.

5    Nimmer, § 7.20[B] ("The courts generally have been most lenient . . . with respect

6    to any innocent error contained in an application for a registration certificate"); 1

7    Paul Goldstein, COPYRIGHT § 3.12.3, at 345 (1989) ("Courts have excused

8    innocent errors or omissions affecting virtually every material aspect of a copyright

9    registration application.").

10        This axiom was recently affirmed in *Jules Jordan Video, Inc. v. 144942*

11   *Canada Inc*., 617 F.3d 1146, 1156 (9th Cir. 2010).  In this case, the Ninth Circuit

12   overturned a ruling invalidating the plaintiff's registration. The District Court's

13   ruling was made, in part, on the grounds that the registration set forth the wrong

14   name for the author of the work. In reversing, the Circuit called the ruling "legally

15   erroneous, inequitable and illogical" because no party other than the plaintiff had

16   the right to claim ownership to the works, and **no fraud** on the Copyright Office

17   was established. Id. at 1156.  This is true in this case, as well. No party other than

18   PRINTEX claims ownership to the design, and there is no fraud.

19        Despite this clear doctrine, LCI argues –without citing to any evidence

20   whatsoever (let alone evidence of fraud) – that PRINTEX's copyright registration

21   is invalid because the designs were not "published' together. Per *United Fabrics*

22   and *Jules Jordan Video*, this motion must fail because (a) PRINTEX's registration

23   is presumed to be valid, (b) LCI has proffered no evidence to rebut that

24   presumption, and (c) no evidence of fraud has been adduced.

25        2.    *The Pro-IP Act requires a finding of validity*

26        If the firm position taken by this Circuit is not enough, in 2008 Congress

27   passed the Prioritizing Resources and Organization for Intellectual Property Act

28

("PRO-IP Act") in an effort to ensure that copyright infringement actions were not dismissed because of harmless technical issues with copyright registrations such as the putative issue alleged by LCI.  17 U.S.C. §411.  This Act, in part, revised 17 U.S.C. § 411 to preclude dismissal of infringement actions when minor errors existed in the registration.  Specifically, it provides in relevant part that:

(1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; **and**

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

(2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b) (emphasis added).

This test is conjunctive, requiring evidence of **both** (A) and (B). In this case, LCI has not produced any evidence that (A) PRINTEX knowingly included inaccurate information in the application or (B) that the inaccurate information would have caused the registration application to be refused. As such, per the above statute, LCI's argument that the registration is invalid must fail.

In addition, where a party alleges that a copyright is invalid because its registration contains inaccurate information, and the Court is inclined to agree with this allegation, courts are required to verify the validity of a copyright with the Register before dismissing. 17 U.S.C. § 411(b)(2).  In making that inquiry, a Court needs to elicit whether the inaccurate information would have caused the Register

15

to refuse to certify the copyright had it been aware of the inaccuracy of the information.  Id.

In this case, there is no evidence whatsoever that anyone other than Plaintiff owns the Subject Design, that Plaintiff knowingly included any inaccurate information on its registration, or that such information would have occasioned a rejection of the registration application. So owing, this motion must be denied.

3.   *The Authorities Cited by LCI are Wholly Inapposite*

LCI, in support of its position, cites repeatedly to a District Court decision that has been expressly overruled by the 9th Circuit. This is in bad faith because it is a proffering of law that LCI knows to no longer be valid.

In the *United Fabrics v. C&J Wear* case, the defendants challenged the validity of the copyright registration at issue on the grounds that the group of designs in that registration were not "published" collectively. The District Court accepted this argument, and dismissed the case. On appeal, the 9th Circuit fully reversed the District Court, finding that:

> The district court similarly ignored the statutory presumption of copyright validity when it reasoned that "[t]he burden to show standing is not a mere pleading requirement, but rather an indispensable part of the plaintiff's case." No cases were cited to us, and we are not aware of any authority, stating that the presumption of validity of a copyright does not apply when standing is at issue. Indeed, such cases do not exist because this rule would render 17 U.S.C. § 410(c)'s presumption of copyright validity meaningless.

*United Fabrics Int'l, Inc.,* 630 F.3d at 1258

LCI also cites to the District Court's decision in *L.A. Printex v. Aeropostale*. This case was decided *prior* to the 9th Circuit's decision in the *United Fabrics Int'l, Inc.* appeal, and is also on appeal and expected to be reversed given the *United Fabrics Int'l, Inc.* holding on the issue.

16

In addition, the *Aeropostale* case is distinguishable because in that case *Aeopostale* proffered concrete evidence in support of its position in the form of deposition testimony. The Court found this evidence sufficient. LCI has offered to this Court no such evidence.

### 4.   There was no discovery misconduct

LCI argues that PRINTEX did not disclose every design covered by the registration that covers the design at issue in this case[6]. The existence of other designs is not relevant to this matter, and disclosing these designs would prejudice PRINTEX given that LCI has already knocked off one of its designs.

Any argument regarding the validity of the copyright registration is precluded by lack of any evidence of fraud, and PRINTEX would rather not disclose a large number of its proprietary designs to a company that has already exhibited a tendency to copy its designs[7]. This notwithstanding, PRINTEX indicated to LCI that it would make the designs available for inspection.

In addition, LCI admits that it has now obtained from the Copyright Office copies of the documents – the deposit copy and all designs submitted with the registration – that it alleges PRINTEX has "withheld."

Also, the "publication" of a copyrighted work occurs when a design is made available to interested parties. *Brown v. Tabb*, 714 F.2d 1088, 1091-92 (11th Cir.1983) ("general publication depends on the author making the work available to those interested, and not on the number of people who actually express an

---

[6] It later admits that it has received a copy of all of these designs from the Copyright Office.

[7] The allegation that PRINTEX "sanitized" the registration is unfounded. LCI Motion pg. 2, lns. 19-21. It is common knowledge in the copyright community that approved copyright registrations are returned by the Copyright Office as **two-page documents**, and these two-page documents do **not** include any images of the works submitted.  The three pages produced in discovery were the two-page registration, and an image of the design at issue.

1  interest."). At a design company, this would be the date that the designs are made

2  available for review in the showroom. Making the designs available in the

3  showroom is not recorded like a business transaction, so there are not necessarily

4  records reflecting the exhibition. As such, the best evidence of the publication date

5  is the date set forth on the copyright registration, which has been produced.

6      Moreover, LCI never provided a L.R. 37 letter detailing why it thought it

7  should have additional access to designs not at issue in the case. LCI also failed to

8  even make a phone call requesting the materials or attempting to meet and confer.

9  If it had, PRINTEX would have met and conferred in good faith in regard to this

10  issue.

11      *5.    The "de minimis" argument is frivolous.*

12      LCI faultily argues that its copying was de minimis because it only copied

13  one of the designs in PRINTEX's collection. This argument is valid only when the

14  copying at issue is of such a trivial extent as to fall below the quantitative threshold

15  of substantial similarity, which is always a required element of actionable copying.

16  See Nimmer § 13.03[A], at 13-27.This argument fails because the taking here is

17  more than trivial. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 US

18  539, 565 (1985), citing *Sheldon v. Metro-Goldwyn Pictures Corp*., 81 F. 2d 49, 56

19  (CA2), *cert. denied*, 298 U. S. 669 (1936)("As Judge Learned Hand cogently

20  remarked, "no plagiarist can excuse the wrong by showing how much of his work

21  he did not pirate.").

22      A brief review of the designs reveals that the **entire design** on LCI's

23  Infringing Product was copied from PRINTEX's design. Because LCI's product

24  bears a design that has been copied in a near-verbatim manner, this argument must

25  be rejected.  Id. ("[…] the fact that a substantial portion of the infringing work was

26  copied verbatim is evidence of the qualitative value of the copied material, both to

27  the originator and to the plagiarist who seeks to profit from marketing someone

28

else's copyrighted expression").This is what we have here; the de minimis argument fails.

6.    *Fees would not be appropriate because argument is not as to merits*

LCI also makes an argument that it should receive its attorneys' fees, though it is not clear why as a fees motion is only appropriate following an adjudication on the merits. In this case there has been no adjudication at all, and LCI is, at best, asking for an adjudication on a procedural issue – that the Court does not have subject matter jurisdiction. This is insufficient to award fees. See, e.g., *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598 (2001).

**CONCLUSION**

LCI has come forward with no evidence to rebut the presumption of validity to which PRINTEX's copyright registration is entitled. All evidence reflects PRINTEX's ownership of a valid registration, and LCI's copying. This motion must be denied.

                                        Respectfully submitted,


Dated: May 2, 2011              By:    /s/ Scott A. Burroughs
                                        Scott A. Burroughs, Esq.
                                        DONIGER / BURROUGHS
                                        Attorneys for Plaintiff
                                        L.A. Printex Industries, Inc.

1

## <u>DECLARATION OF JAE NAH</u>

2      I, Jae Nah, declare that I am of the age of majority, have personal knowledge

3  of the following, except for those matters stated on information and belief, and

4  state that if called as a witness I could and would competently testify as follows:

5      1.      I am the president of L.A. Printex Industries, Inc. ("L.A. Printex"),

6  Plaintiff in this action. I have reviewed the documents and records relevant to this

7  action, and I provide this Declaration from my personal knowledge.

8      2.      L.A. Printex discovered that LCI was selling garments and handbags

9  bearing a knock-off of one of its fabric designs in the United States. I have

10  attached as Exhibit 1 a true and correct copy of an image of one such product. LCI

11  was caught selling **three** different infringing products in its "Le Chateau" stores in

12  New York – a handbag or tote, a dress, and a jacket. Further investigation revealed

13  that LCI was selling additional infringing product in the form of skirts and dresses

14  online and in its stores in Canada.

15      3.      The graphic design at issue was and is owned by Plaintiff and

16  registered with the U.S. Copyright Office. I have attached as Exhibit 2 a true and

17  correct copy of the design.

18      I declare under penalty of perjury under the laws of the State of California

19  and the United States of America that the foregoing is true and correct. Executed

20  this 2nd day of May, 2011 at Vernon, California.

21

22

23      By:   _____

24            JAE NAH
              Declarant

25

26

27

28

OPPOSITION TO MSJ

1

**DECLARATION OF SCOTT A. BURROUGHS, ESQ.**

2      I, Scott A. Burroughs, Esq., declare that I am at least 18 years old and am

3   competent to make the testimony set forth below.  I am a shareholder at DONIGER

4   / BURROUGHS APC, attorneys for Plaintiff in this action. I make this declaration

5   in opposition to LCI's second summary judgment motion.  If called as a witness I

6   could and would competently testify as follows:

7      1.      Our law firm represents L.A. Printex Industries, Inc. ("L.A. Printex")

8   in this action.

9      2.      We discovered that the garments and handbags at issue in this case

10   ("Infringing Product') had been manufactured by LCI in Canada, and then sold at

11   LCI retail stores in Canada and the United States.

12      3.      Plaintiff also discovered that LCI had imported the Infringing Product

13   – all of which bore a tag reading "le chateau" – into the United States in violation

14   of 17 U.S.C. §602.

15      4.      LCI is a vertically integrated company, with a division that

16   manufactures and imports the garments, and a division that sells these garments

17   through retail stores. In this case, LCI eventually conceded that it had

18   manufactured the Infringing Garments under the "le chateau" brand, labeled each

19   garment with a "le chateau" tag, and then imported them into the United States. In

20   the United States, it distributed the "le chateau" Infringing Garments to its "Le

21   Chateau"-branded retail stores. Its retail stores then sold the Infringing Garments to

22   the public.

23      5.      LCI refused to provide the documents to counsel in California, as

24   these documents would have reflected the fraudulent nature of the declaration and

25   the statement that only 77 units of Infringing Product were sold in the United

26   States. To date, LCI has not produced a single document in discovery. It also

27   continues to refuse to identify its source for the design on the Infringing Product.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

It also refused to identify its source for the design on the Infringing Product. Id. Though it is now making its second motion for summary judgment, it is still unwilling to make that representation.

6.      In any event, despite the lack of cooperation in producing the documents, Plaintiff offered to resolve the case with LCI for $3,000.00, which was far less than the cost of investigating this particular infringement. The agreement then broke down over the language of the confidentiality provision.

7.      We have since attempted to resolve the case with LCI, but LCI has indicated it will not settle unless PRINTEX pays LCI's attorneys' fees. Given the clear liability of LCI for copyright infringement, this position was not reasonable. I have attached as Exhibit 3 a true and correct copy of an email from opposing counsel reflecting this position.

8.      I have attached as Exhibit 4 a true and correct copy of the 9th Circuit's ruling in *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 2nd Day of May, 2011, at Culver City, California.

By:    /S/ Scott A. Burroughs
       Scott A. Burroughs, Esq.

OPPOSITION TO MSJ