1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
    David W. Quinto (Bar No. 106232)
2    davidquinto@quinnemanuel.com
    Daniel C. Posner (Bar No. 232009)
3    danposner@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
5  Facsimile:  (213) 443-3100

6  Attorneys for Defendant
   LE CHÂTEAU, INC.
7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                      WESTERN DIVISION

11 | L.A. PRINTEX INDUSTRIES, INC., a | CASE NO. CV10 4264-ODW (FMOx)
   | California Corporation,           |
12 |                                   | **LE CHÂTEAU'S REPLY**
   |                                   | **MEMORANDUM OF POINTS AND**
13 |         Plaintiff,                | **AUTHORITIES IN SUPPORT OF**
   |     vs.                           | **MOTION FOR SUMMARY JUDGMENT;**
14 |                                   |
   | LE CHÂTEAU, INC., a Canadian      | **SUPPLEMENTAL DECLARATION OF**
15 | Corporation; and DOES 1-10,       | **DAVID W. QUINTO**
16 |         Defendants.               |
17 |                                   | Date:       May 23, 2011
   |                                   | Time:       1:30 p.m.
18 |                                   | Courtroom:  11
   |                                   | Judge:      Hon. Otis D. Wright, II

19
20
21
22
23
24
25
26
27
28

04211.23238/4123602.1

Case No. CV10 4264-ODW (FMOx)
LE CHÂTEAU'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## Preliminary Statement

Plaintiff nowhere disputes that the Court *in fact* lacks subject matter jurisdiction to hear this case. Instead, it asks that the Court rely only on a presumption that subject matter jurisdiction exists. In theory, the presumption is rebuttable. However, all evidence necessary to rebut the presumption was or is in plaintiff's sole possession and plaintiff has spoliated it or otherwise refused to provide it. Accordingly, plaintiff is asking the Court to rely on plaintiff's own bad faith in presuming that there is subject matter jurisdiction.

In doing so, plaintiff has misrepresented the holding of a Ninth Circuit case that its own counsel briefed, argued and won. *United Fabrics International, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011), concerned the copyright registration of a "collection of fabric designs as an unpublished collection of works." *Id.* at 1259. Here, in contrast, the collection at issue was registered as a published work and, as the Ninth Circuit explained, a "necessary element of a published-collection copyright is that the collection is sold, distributed or offered for sale concurrently." *Id.*

Plaintiff, alone, could provide evidence concerning whether the collection at issue was concurrently "sold, distributed or offered for sale," but, in responding to Le Château's discovery requests, it failed and refused to provide any such evidence. Had there been any such evidence, plaintiff could have easily pointed to it in opposing this motion. Plaintiff provided a declaration from its principle, Jae Nah, but even he declined to aver that the works were published *as a collection*.

The issues, then, are whether the Court may rely on a presumption that there is subject matter jurisdiction when not even plaintiff claims that subject matter jurisdiction *in fact* exists, and whether plaintiff is entitled to rely on that presumption when it failed to keep, destroyed, or refused to produce all evidence necessary to rebut the presumption.

# Argument

## I. THERE IS NO BASIS TO BELIEVE THAT SUBJECT MATTER JURISDICTION *IN FACT* EXISTS.

As explained in Le Château's moving papers, the Ninth Circuit made clear in *United Fabrics* that there is a clear distinction between the registration of a "published" collection of works and the registration of an "unpublished" collection of works. Citing the Copyright Act, 17 U.S.C. § 101, the Ninth Circuit held that a "necessary element" of a published-collection copyright is that "the collection is sold, distributed or offered for sale concurrently" and, citing 37 C.F.R. § 202.3(b)(4)(i)(B), it noted that for an unpublished collection, "there is no such requirement." 630 F.3d at 1259. In holding that such requirement exists for published collection copyrights, the Ninth Circuit was entirely consistent with the earlier holding in *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 205 (3d Cir. 2005).

In discussing *United Fabrics,* plaintiff has ignored that it concerned an *unpublished* collection. Further, plaintiff has misstated the *United Fabrics* holding in arguing that Judge Pregerson's explanation of the legal requirements of a collective-work registration should be disregarded because his decision was reversed. In fact, the Ninth Circuit did not criticize in any way Judge Pregerson's analysis of the legal requirements of a collective-registration of public works. Indeed, its holding that the concurrent sale, distribution or offering for sale of the items included in a published-collection copyright is a "necessary element" is a strong affirmation of Judge Pregerson's analysis. The Ninth Circuit held only that Judge Pregerson had erred by extending that analysis to cover unpublished collections. Because plaintiff herein registered its works as a published collection, it is obligated to show that they were published *as a collection*.

In deference to that unavoidable conclusion, plaintiff argues that it should not be punished for "a misstatement or clerical error in the registration application." Opposition Memorandum ("Opp. Mem.") at 12:18-19. Of course, there is no evidence of any "misstatement or clerical error." Ignoring that omission, plaintiff then makes a straw argument that a simple "misstatement or clerical error in the registration application" provides an insufficient basis "to establish a fraud

on the Copyright Office." Opp. Mem. at 12:21-22. Le Château has, of course, never argued that there was a fraud on the Copyright Office. It has argued only that the registered works were never published as a collection. Significantly, the Declaration of Jae Nah submitted in opposition to the motion nowhere avers that there was any "misstatement or clerical error in the registration application," nor does it aver that the works were unpublished when registered. Nor could Mr. Nah so declare: the registration application recited the date of publication, which preceded the date of registration. Because the date of publication is provided in the registration application, plaintiff cannot claim that it inadvertently "checked" the wrong box (and, as noted, offered no evidence that it did so). More importantly, because plaintiff's sole basis for invoking the jurisdiction of the federal courts is provided by the copyright registration certificate - which plaintiff has never attempted to amend or correct - plaintiff cannot now disavow it.[1] Plaintiff also bizarrely cites the PRO-IP Act, 17 U.S.C. § 411, for no apparent reason. The PRO-IP Act provides that, under certain conditions, a certificate of registration containing "inaccurate" information will not destroy a copyright infringement claim. Here, of course, plaintiff has not adduced *any* evidence that the copyright registration certificate at issue contained "inaccurate" information. Plaintiff's declarant, Jae Nah, could easily have said so, but he declined to do so.[2]

Accordingly, a necessary element of plaintiff's claim is that it prove that the works registered as a published collection were in fact published as a collection.

---

[1] Plaintiff's decision to register its claimed works as "published" or "unpublished" is not trivial. Le Château's counsel in this action has been involved in other cases brought by plaintiff L.A. Printex Industries, Inc., in which third parties had published those works or were already in the process of preparing such works for publication when plaintiff registered them as "unpublished" works. In such instances, the defendants were handed an obvious "independent creation" defense and a strong suspicion was created that plaintiff had merely registered designs created by others (typically in Korea) as its own "original" works. To preclude the possibility of an "independent creation" defense, plaintiff now typically registers its works as "published," as of a date in advance of its application for copyright registration. Supplemental Declaration of David W. Quinto dated May 5, 2011, ¶ 2.

[2] One can speculate that because Le Château's counsel previously caused Mr. Nah to be found in contempt of court for making a false statement in a declaration, Mr. Nah is now shying away from making claims that could be proved false.

## II. LE CHÂTEAU IS ENTITLED TO A PRESUMPTION THAT THE EVIDENCE PLAINTIFF HAS WITHHELD OR SPOLIATED WOULD BE UNFAVORABLE TO IT.

Plaintiff has noted correctly that its copyright registration certificate entitles it to a presumption that the facts stated therein, including that the patterns subject to the registration were published as a collection, are true. But that presumption is rebuttable. For that reason, Le Château propounded both document requests and interrogatories directed to discovering evidence that might rebut the presumption. As reflected in Exhibit I to the Declaration of David W. Quinto in support of Le Château's Motion for Summary Judgment dated April 22, 2011, Le Château sought documents "sufficient to show the dates of sale and the identity of the purchaser" of any fabric printed with each of the 12 designs subject to the copyright registration certificate in issue, as well as all documents "evidencing, reflecting or referring to the date on which [plaintiff] first offered for sale" each design subject to the copyright registration certificate in issue. Except as to the one design as to which plaintiff claims infringement, plaintiff's responses were identical:

> Objection: Vague, calls for legal conclusion, not narrowly tailored to lead to the discovery of admissible evidence, intrusive of the privacy rights of third parties.

Significantly, though, in response to Request No. 19, which sought information concerning the publication of the specific pattern that plaintiff alleges was infringed, plaintiff as much as conceded that the registered works were never published as a collection:

> [O]nce plaintiff's design team has completed the designs, the collection is released to the company's sales representatives, which exhibit Plaintiff's designs to Plaintiff's customers in the apparel industry by showing said customers samples and images of Plaintiff's designs. The sales team will also provides [sic] swatches, headers, and other samples to potential customers for the customers' further review. ... While records are kept as to when orders are placed, there is no record of each and every time a design or collection is shown, or when the designs or collections are first offered to customers.

In other words, the sales representatives show *all* available designs to plaintiff's customers without regard to whether the individual designs were registered pursuant to this certificate of copyright registration or that certificate of copyright registration. They are not offered as separate

collections. Further, the patterns were released to the sales representatives "once [the] design team ha[d] completed the designs" - as opposed to "when the collection had been published."

Plaintiff's responses to Le Château's interrogatories were also evasive. As reflected in Exhibit J to the Quinto Declaration, Le Château propounded separate interrogatories asking as to each pattern included within the collective registration: "With respect to the first such sale reflected in YOUR records, state the date of sale and identity of the purchaser" of the fabric printed with that design. In all cases, plaintiff's response was the same:

> Objection: Vague, calls for a legal conclusion, not narrowly tailored to lead to the discovery of admissible evidence, intrusive of the privacy rights of third parties.

Because plaintiff, alone, would and should have evidence concerning whether the 12 patterns subject to the copyright registration were *in fact* published as a collection but plaintiff has instead failed to keep, refused to produce, or spoliated all such evidence, plaintiff has made it impossible for Le Château to disprove that the federal courts have subject matter jurisdiction to hear this case.

### III. PLAINTIFF TACITLY CONCEDES THAT THE "ADVERSE INFERENCE" RULE SHOULD APPLY HERE.

Because plaintiff has withheld or failed to keep all evidence necessary to challenge the presumption that the 12 patterns that are the subject of its copyright registration were published as a collection, Le Château's moving papers argued at 8:3-22 that it is entitled to an adverse inference presumption. In support of its argument, Le Château cited two Ninth Circuit cases, one case from the Eighth Circuit, and the *Federal Jury Practice Instructions*. Plaintiff's opposition nowhere mentions any of those authorities, nor does plaintiff offer any explanation or argument why the adverse inference rule should not apply here. The obvious conclusion is that it does, and that the Court is entitled to infer that the evidence concerning whether the 12 patterns were published as a collection would be unfavorable to plaintiff. Because the Court may infer that such evidence would be unfavorable, plaintiff is not entitled to rely on the rebuttable presumption that the patterns at issue were published as a collection. That is also consistent with common sense. A

sales representative would not attempt to sell separate collections of 12 patterns each but would attempt to sell all available patterns without regard to how they were registered.

### IV. PLAINTIFF HAS ALSO FAILED TO REBUT LE CHÂTEAU'S SHOWING THAT ANY INFRINGEMENT OF ITS COLLECTION WAS DE MINIMIS.

Is an anthology infringed if someone reproduces a single work included therein without permission? Obviously not. If the copied story is independently subject to copyright protection, the owner of the copyright therein might have a claim for infringement but the holder of the copyright in the anthology has no claim that the collective work was infringed.

So too, here. There are 12 patterns subject to the copyright registration. None is alleged to be more important or more valuable than any other. There is no argument that any one pattern is akin to the signature musical phrase in a piece of music that, when played, immediately calls to mind the entire musical composition. Nor is there any contention that any one pattern is akin to a dramatic or highly memorable scene in a motion picture that will be immediately recognized by the public long after the movie was last exhibited. Instead, the pattern at issue is merely 8.5 percent of a collection of otherwise equal works. Accordingly, there is no "substantial" similarity between the one pattern at issue and the 12 patterns subject to the copyright registration certificate.

### V. BECAUSE LE CHÂTEAU'S MOTION DOES NOT CONCERN A "PROCEDURAL ISSUE," LE CHÂTEAU SHOULD BE AWARDED ITS COSTS AND FEES

Plaintiff mischaracterizes Le Château's motion as, "at best, asking for an adjudication on a procedural issue." Opp. Mem. at 19:6-7. On that basis, it avers without further analysis that any award of fees is barred by *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

Not so. Establishing that all courts lack subject matter jurisdiction to hear plaintiff's claim is not a mere "procedural" issue. Rather, if Le Château's motion is granted, the Court will have

1  ruled *as a matter of law* that plaintiff cannot prevail on its copyright infringement claim in any
2  court.³

3       *Buckhannon* addressed whether the phrase "prevailing party," as used in the Fair Housing
4  Amendments Act of 1988 and the Americans with Disabilities Act of 1990, "includes a party that
5  has failed to secure a judgment on the merits or a court-ordered consent decree, but has
6  nonetheless achieved the desired result because the lawsuit brought about a voluntary change in
7  the defendant's conduct." 532 U.S. at 600. In *Buckhannon*, assisted living care facilities failed a
8  state inspection. After receiving cease-and-desist orders requiring the closure of its residential
9  care facilities, the owner sought declaratory relief that West Virginia had exceeded the
10 requirements of the applicable federal statutes in conducting the inspection. West Virginia agreed
11 to stay enforcement of the cease-and-desist orders pending the outcome of the declaratory
12 judgment action. While that action was pending, the West Virginia Legislature eliminated the test
13 requirements that had caused the plaintiff to fail the inspection. The civil litigation was then
14 dismissed as moot and the plaintiff sought attorney's fees as the "prevailing party." *Id*. at 601.

15      In concluding that achieving dismissal following an amendment to the applicable law did
16 not make the Buckhannon Board & Care Home the "prevailing party," the Court noted that prior
17 decisions had properly held that a party can be a "prevailing party" when it "has prevailed on the
18 merits of at least some of his claims." *Id*. at 603. It further noted that a "material alteration of the
19 legal relationship of the parties" had been held sufficient to permit an award of attorney's fees. *Id*.

---

³ Plaintiff could conceivably register a claim of copyright in the pattern in suit as a free-standing work and attempt to bring a new infringement action. However, even if it does so, Le Château will have won permanent relief. Section 412 of the Copyright Act provides that if registration is not effected within "the earlier of 3 months after first publication of the work or 1 month after the copyright owner has learned of the infringement," the plaintiff cannot recover either statutory damages or attorney's fees. Accordingly, in any future action plaintiff's total potential recovery would be limited to the actual profits earned from the sale of a few dozen garments and less than one dozen tote bags. Further still, as reflected in the exhibits to Mr. Nah's declaration, Le Château sold the challenged items in 2007. Accordingly, any claim based thereon would now be time barred. 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.") Thus, Le Château will gain substantial, permanent relief if its motion is granted.

at 604. On the other hand, the Court rejected the notion that the term "prevailing party" authorizes the award of attorney's fees "to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit . . . has reached the 'sought-after destination' without obtaining any judicial relief." *Id.* at 606.

Here, in contrast, plaintiff cannot contend that it brought a "nonfrivolous" lawsuit when it had no facts whatever to support the assertion of federal jurisdiction. Nor can it argue that Le Château gained mere "procedural" relief if its summary judgment motion is granted. It will have eliminated any exposure to statutory damages and attorneys' fees. If Le Château prevails, its success will not have been achieved in the legislature but in the courthouse. It will, therefore, be the "prevailing party."

And Le Château would in any event be entitled to an award of attorney's fees under its pending motion to dismiss brought pursuant to Fed. R. Civ. P. 11.

## Conclusion

For the reasons set forth above and in Le Château's moving papers, summary judgment should be entered against plaintiff herein and Le Château should be awarded its costs and fees in an amount to be determined by the Court.

DATED: May 5, 2011

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____
David W. Quinto
Attorneys for Defendant
LE CHÂTEAU, INC.

## SUPPLEMENTAL DECLARATION OF DAVID W. QUINTO

1.  I am a member of the Bar of the State of California and of this Court. I am also a partner of Quinn Emanuel Urquhart & Sullivan, LLP, attorneys for Defendant Le Château, Inc., herein. I make this declaration of my personal and firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.  In the past, I have represented other entities sued by the plaintiff herein, L.A. Printex Industries, Inc., for alleged copyright infringement. In one such action (that ultimately terminated in a "nuisance" settlement), my client provided three textile patterns L.A. Printex Industries had sued upon were published in Korea before L.A. Printex Industries filed to register them in the United States as its "original," unpublished works of art. In that same action, my client showed me two other patterns that had appeared in fashion magazines published in the United States years before L.A. Printex Industries had applied to the United States Copyright Office to register them as its "original" works of art. In another action that also terminated in a settlement, my client provided me with evidence that the pattern in suit was published in Korea before L.A. Printex Industries registered it as its "original" work of art. Further, my client provided me with evidence that it had already completed the steps necessary to print the design before the date that L.A. Printex Industries claimed to have published the pattern.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this fifth day of May, 2011, at Los Angeles, California.

_____
David W. Quinto