Stephen M. Doniger, Esq. (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs, Esq. (SBN 235718)
scott@donigerlawfirm.com
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile:  (310) 417-3538
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. PRINTEX INDUSTRIES, INC., a California Corporation;<br><br>Plaintiff,<br><br>v.<br><br>LE CHATEAU, INC.; et al.,<br><br>Defendants. | CV 10-4264 ODW (FMOx)<br>*The Honorable Otis D. Wright II Presiding*<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION PURSUANT TO FED. R. CIV. P. 56; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JAE NAH AND SCOTT A. BURROUGHS, ESQ.**<br><br>*[Statement of Uncontroverted Facts and Conclusions of Law;[Proposed] Order Submitted Concurrently Herewith]*<br><br>Date: June 13, 2011<br>Time: 1:30 p.m.<br>Courtroom: 11 – Spring St. Courthouse |

i

*TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:*

PLEASE TAKE NOTICE THAT on June 13, 2011, in Courtroom 11 of the Spring Street Courthouse, located 312 N. Spring Street, Los Angeles, CA 90012, L.A. Printex, Inc. ("PRINTEX") will move pursuant to Federal Rule of Civil Procedure 56 for summary adjudication of liability as to Le Chateau, Inc. ("LCI") for copyright infringement.

PRINTEX can establish that it is entitled to such a determination as a matter of law on the following grounds: (1) Plaintiff owns, and holds a valid copyright in, the two-dimensional artwork – a textile design with design code "E50193" – at issue in this matter ("Subject Design"), granting it a rebuttable presumption of ownership of the Subject Design; (2) LCI sold and distributed garments and handbags bearing a virtually identical unauthorized reproduction of the Subject Design ("Infringing Product") to Chateau Stores, Inc. ("CSI"), its wholly-owned subsidiary, and CSI sold the Infringing Product to the public; (3) The Subject Design was used on the Infringing Product without right or authorization of Plaintiff; and (5) LCI conceded at deposition that it did not create or license the design on the Infringing Product, and is unaware as to from where it obtained said design.

There is no triable issue of fact that LCI, in manufacturing, selling, and distributing the Infringing Product, has violated Plaintiff's copyrights in the Subject Design. Given the foregoing, Plaintiff seeks an adjudication of the following issues:

1) Plaintiff owns a valid copyright for the Subject Design;

2) LCI liable for copyright infringement due to their purchase, distribution, and sales of the Infringing Product;

3) LCI is vicariously liable for CSI's sales of the Infringing Product; and

4) LCI is liable as an alter ego for CSI's sales of the Infringing Product.

If the Court finds that LCI is not subject to jurisdiction in this venue, and has not waived its personal jurisdiction defense by filing a motion challenging

jurisdiction and then withdrawing it and filing a motion for summary judgment that challenged another aspect of the case, PRINTEX respectfully moves this Court for an Order transferring this case to the Southern District of New York, as set forth in PRINTEX's motion to transfer, which was previously filed. This is appropriate because the sales of the Infringing Product took place in that District.

This Motion is based on the attached Memorandum of Points and Authorities, the Statement of Uncontroverted Facts, and the Declarations of Jae Nah and Scott A. Burroughs, Esq., filed herewith, the papers and evidence on file in this case, and such evidence and argument as may be received at the hearing.

The conference of counsel required by Local Rule 7-3 was held by the parties on May 3, 2011. LCI would not stipulate to liability or the transfer, but did concede that the design on the Infringing Garments is substantially similar to the Subject Design. LCI also would not stipulate to continuing the hearing date on its motion for summary judgment, currently set for May 23, 2011, to June 13, 2011 so that one hearing could be held to address the motions.

PRINTEX submits that there is no question as to liability, and respectfully requests that this Court grant this motion.

Respectfully submitted,

Dated: May 13, 2011                    DONIGER / BURROUGHS


By: /S/ Scott A. Burroughs
Scott A. Burroughs
Attorney for Plaintiff

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 1

II.     STATEMENT OF FACTS .................................................................... 1

III.    ARGUMENT ....................................................................................... 4

  1.    Plaintiff's Ownership Of The Subject Design Is Beyond Reasonable Dispute .. 5

       The Subject Design's registration is valid .................................................. 6

  2.    LCI Infringed Plaintiff's Rights in the Subject Design ................................. 10

     (a)    Direct infringement – unlawful authorization .......................................... 10

     (b)    Direct infringement – importation, distribution, purchase, and sales .......... 12

     (c)    Vicarious liability ........................................................................... 15

     (d)    Alter ego liability .......................................................................... 18

  3.    IV. SUMMARY ADJUDICATION IS APPROPRIATE ................................ 19

1

2

## <u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Addisu v. Fred Meyer, Inc.* 198 F. 3d 1130, 1134 (9th Cir. 2000) ................................5

*American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.), *cert. denied,* 488
   U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988) ...................................22

*Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir.1987)................................5

*Broadcast Music, Inc. v. Hartmarx Corp.*, 9 U.S.P.Q.2d 1561, 1562, 1988 WL
   128691 (N.D.Ill.1988) ................................................21

*Cable/Home Communication Corp. v. Network Prods., Inc.* 902 F.2d 829, 846 (11th
   Cir. 1990) ......................................................14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2505, 91 L. Ed. 2d 265 (1986) .....4

*Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405-1406 (9th Cir. 1994) ...........23

*Columbia Pictures Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160-61 (3d Cir.1984)....19

*Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161–62 (1st Cir.
   1994) ........................................................9

*Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980) .....................7

*Eckes v. Card Price Update,* 736 F.2d 859, 861-62 (2d Cir. 1984)...........................9

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1553 (9th Cir.
   1989) ...................................................... 19, 21

*GB Marketing USA, Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763,
   773 (W.D.N.Y 991) ..............................................14

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159,
   1162 (2nd Cir.1971).............................................18

*Hamil America Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999).................................7

*Itsi TV Productions v. Cal. Auth. of Racing Fairs*, 785 F. Supp. 854, 860 (E.D. CA
   1992) ........................................................13

v

*Jules Jordan Video, Inc. v. 144942 Canada Inc.,* 617 F.3d 1146, 1156 (9th Cir. 2010) ........................................................................................................................... 10

*Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 (9th Cir. 1994) ...... 17

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140 (9th Cir. 2003) ........ 7

*Lennon v. Seaman,* 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) ................................... 8

*Lipton v. Nature Co.,* 71 F.3d 464, 471 (2d Cir.1995).............................................. 16

*Masquerade Novelty, Inc. v. Unique Indus., Inc.,* 912 F.2d 663, 668 n.5 (3ʳᵈ Cir. 1990) ....................................................................................................................... 9

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 US 913, 930-931 (2005) 18

*N. Coast Indus. v. Jason Maxwell, Inc.,* 972 F.2d 1031 (9th Cir. 1992)...................... 7

*Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1093 n.4 (2d Cir. 1977) ......................................................................................................................... 17

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 829 (11th Cir.1982) ................................................................................................................. 17

*Peter Pan Fabrics, Inc. v. Acadia Company,* 173 F.Supp. 292, 298 (S.D.N.Y.1959), *aff'd,* 274 F.2d 487 (2d Cir. 1960) ........................................................................ 21

*RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.,* 845 F.2d 773, 781 (8th Cir.1988) ......................................................................................................................... 19

*Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.,* 482 F. Supp. 980, 988 (D.C.N.Y. 1980) ....................................................................................................................... 9

*S.O.S., Inc. v. Payday, Inc.* 886 F.2d 1081 (9th Cir. 1989)....................................... 7

*Selle v. Gibb,* 741 F.2d 896, 903 (7th Cir. 1984) .................................................... 15

Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir.1963) ........ 19

*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157 (9th Cir.1977)......................................................................................................... 17

*Smith v. Jackson,* 84 F.3d 1213, 1220 (9th Cir.1996) ............................................. 15

*Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 104 S.Ct. 774, 785 n. 17, 78 L.Ed.2d 574 (1984)........................................................................ 13

vi

*Southern Bell Tel. & Tel. v. Association Tel. Directory*, 756 F.2d 801, 811 (11th Cir.1985) ................................................................................................................19

*Spectravest, Inc. v. Mervyn's, Inc.*, 673 F. Supp. 1486 (N.D. Cal. 1987) ....................9

*Stratchborneo v. Arc Music Corp.*, 357 F.Supp. 1393, 1403 (S.D.N.Y.1973) ...........15

*Subafilms, Ltd. v. MGM-Pathe Communications, Co.*, 24 F. 3d 1088, 1093(9th Cir. 1994) ........................................................................................................................12

*Tarin v. County of Los Angeles*, 123 F. 3d 1259, 1263 (9th Cir. 1997) ........................4

*Testa v. Janssen*, 492 F.Supp. 198, 203 (W.D.Pa.1980) .......................................15, 16

*Thomson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 777 (2d Cir.1995) 22

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.,* 630 F.3d 1255 (9th Cir. Cal. 2011) .......7

*Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997)................................8

*Wm. Passalacqua Builders Inc. v. Resnick Developers S., Inc.,* 933 F.2d 131, 139 (2d Cir.1991) ...................................................................................................................23

**Statutes**

17 U.S.C. § 106 .................................................................................................5, 12, 14

17 U.S.C. § 602 ...........................................................................................................5

17 U.S.C. §106(2)......................................................................................................5, 6

17 U.S.C. §411 ..........................................................................................................11

**Rules**

Fed. R. Civ. P. 56(c) ...................................................................................................4

**Other Authorities**

David Nimmer & Melville B. Nimmer, Nimmer on Copyright §12.04A (2005) at 12-71-72 ...............................................................................................................................12

Nimmer § 12.04[A] ...................................................................................................20

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is an action against clothing and handbag company LCI for copyright infringement. LCI, based in Canada, has manufactured, distributed, and imported garments and handbags that bear a knock-off of a textile design created and owned by PRINTEX. LCI sold this product under the brand name "le chateau" at "Le Chateau" retail stores in the United States. LCI managed these stores through wholly-owned subsidiary, CSI.

Subsequent to PRINTEX's discovery of the Infringing Product, LCI admitted that its designers did not create, or have a license to use, the design on the Infringing Product, but refused to divulge its source for said design. It later admitted that the design on the Infringing Product was substantially similar to the Subject Design. Given these concessions, summary adjudication in favor of PRINTEX is appropriate.

This motion is brought because, as set forth more fully below, there is no reasonable dispute that (1) PRINTEX holds a valid copyright registration in the Subject Design, granting it a rebuttable presumption of ownership of the Subject Design; (2) Infringing Product bearing a substantially similar and unauthorized reproduction of the Subject Design were purchased and sold by LCI and/or CSI; (3) LCI has admitted that the two designs are substantially similar and that it cannot prove it had any right to use the design on the Infringing Product.

Given the above, PRINTEX respectfully requests that this motion be granted, so the issues can be streamlined and parties can proceed to trial solely on the issue of damages. In the alternative, PRINTEX respectfully requests it be transferred to the Southern District of New York, as set forth in PRINTEX's motion to transfer.

## II.   STATEMENT OF FACTS

PRINTEX is a Los Angeles-based design company. Nah Decl. ¶2. It creates original textile designs, or purchases the exclusive rights to designs that are created

by reputable art studios.  Id.  At the time of the infringement it was critical to
PRINTEX's business to be the exclusive source of its designs because this design
portfolio allowed it to stand out in the market and compete against other companies
that charged lower rates but were unable to offer trendy, fashion-forward designs. Id.

PRINTEX owns the rights to an original work of art depicting interlaced
geometric elements and latticework imagery. Nah Decl. ¶ 3; Ex. 1. PRINTEX has
entitled this work "E50193" ("Subject Design").  It was created by PRINTEX's
design team under the supervision of Jae Nah, the head of the design team. Id. The
Subject Design was finalized by PRINTEX and then prepared and formatted for use
on textiles. Nah Decl. ¶ 4. The Subject Design at all relevant times was exclusively
owned by PRINTEX. Id. It was then registered with the United States Copyright
Office on December 19, 2005, where it was assigned U.S. Copyright No. VA 1-344-
916. Id. Ex. 2. In registering Subject Design, PRINTEX deposited a copy of the
Subject Design with the Copyright Office. Nah Decl. ¶ 5.

After LCI objected to the form of the registration, PRINTEX submitted a
FORM CA removing all designs from the registration except for the Subject Design.
Nah Decl. 6, Ex. 3.

Starting on December 23, 2005, PRINTEX sampled and sold over twenty
thousands of yards of fabric bearing the Subject Design to its customers.  Nah Decl. ¶
7; Ex. 4.  Most of these customers are fabric converters[1] that had fabric printed with

---

[1] A "fabric converter" is a company that acts as a middle-man between the printing
mill and the garment manufacturer.  It generally takes designs (sometimes that it
owns, sometimes that the printing mills owns, and sometimes public domain designs)
to show its customers in the hopes of securing orders.  While it is obligated to bring
printing orders for designs owned by a printing mill back to that mill, converters have
certainly been known to send proprietary designs overseas to have them "knocked
off" – sometimes ordering the overseas mill to change them slightly, where they
would otherwise lose a sale because of the higher price of printing domestically.  *See*
Nah Decl. ¶ 7.

the Subject Design for garment manufacturers.  Id. The fabric was then manufactured into thousands of garments for sale at a wide variety of retail stores.

PRINTEX discovered the Infringing Product, which bears a "le chateau" label, being sold at "Le Chateau" retail stores in New York City, New York. Nah Decl. ¶8, Ex. 5.  Despite LCI's name being on both the Infringing Product, and the retail stores in which it was sold, it refused to acknowledge that it was responsible these sales, claiming that CSI was the responsible party.

LCI has, however, now admitted that it "controls" "Chateau Stores," which are run by its wholly-owned subsidiary, CSI. Ex. 6, Nos. 14, 20. It has conceded that it owns 100 percent of the equity in CSI, and that the LCI and CSI share their executives. Ex. 7 Nos. 12. It has conceded that no other party has any ownership in CSI. Ex. 6, No. 16. LCI has also admitted that it has the authority to create company policy for CSI. Id., No. 18.

It has conceded that LCI is the party responsible for designing the product at issue (Ex. 7, No. 20), and providing said product to its subsidiary, CSI. Id., No. 9.  It concedes that it provided these bags and garments to CSI in the United States. Id., No. 10. It has also LCI provided and shipped the product at issue in this case to CSI. Ex. 6, Nos. 21, 22. LCI admits that it distributed at least 77 garments and 14 handbags to CSI in the United States. Id., No. 9.

LCI attempts to shield itself from liability through CSI because there is no question that the design on the LCI garments and handbags was copied from the PRINTEX design. A review of the images makes this clear. The PRINTEX design is below on the right, the LCI design is below on the left.

*///*



The copying is self-evident. For this reason, LCI has conceded that the designs are substantially similar. Burroughs Decl. ¶1; Ex. 8 (Stipulated Fact).

The importation and distribution by LCI of the Infringing Product, and the sale of these items by CSI in the United States are directly infringing acts. In addition, LCI is vicariously liable for these acts, and is liable as an alter ego for CSI for same.

**III.    ARGUMENT**

Plaintiff's claims are ripe for entry of summary adjudication as to the liability of LCI for infringement of the Subject Design.  Under Fed.R.Civ. P. 56(c), summary judgment must be granted if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *Tarin v. County of Los Angeles*, 123 F. 3d 1259, 1263 (9th Cir. 1997). The moving party shifts the burden by presenting evidence to establish the

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2505, 91 L. Ed. 2d 265 (1986). This showing must be substantive, a "scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of, material fact." *Addisu v. Fred Meyer, Inc.* 198 F. 3d 1130, 1134 (9th Cir. 2000).

To succeed on its copyright infringement claim, Plaintiff must "show ownership of the allegedly infringed material and […] demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. See 17 U.S.C. § 501(a) (infringement occurs when alleged infringer engages in activity listed in § 106); see also *Baxter v. MCA, Inc*., 812 F.2d 421, 423 (9th Cir.1987). One of these rights is the right to prepare derivative works from the copyrighted material. 17 U.S.C. §106(2). Another is the exclusive right to distribute and sell product bearing the copyrighted work 17 U.S.C. §106(3)("to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending").  It is also illegal to import infringing product into the United States. 17 U.S.C. § 602.

LCI has violated 17 U.S.C. §602 by importing the Infringing Product and distributing it to CSI for sale at the "Le Chateau" retail stores. It is directly liable for this conduct. LCI is vicariously liable, and liable as an alter ego, for CSI's sale of the Infringing Product, which violated 17 U.S.C. §106(2).

No genuine issue of material fact exists as to Plaintiff's ownership of the Subject Design, or LCI's infringement. As such, summary adjudication on the issue of liability is appropriate.

**1.  <u>Plaintiff's Ownership Of The Subject Design Is Beyond Reasonable Dispute</u>**

The only evidence in this case regarding Plaintiff's ownership of the Subject Design is that said design was an original work of art developed and formatted in

repeat[2] for use on fabric.  There is absolutely no evidence that said artwork is unoriginal or not copyrightable. Moreover, Plaintiff holds a duly-issued copyright registration which covers the Subject Design, thereby creating a presumption of Plaintiff's ownership[3].  Ex. 2.

LCI has failed to rebut this presumption with competent and persuasive evidence.  Because no such evidence exists in this case, the first element of Plaintiff's claim – ownership of a copyright – is firmly established.

The only contrary "evidence" that Plaintiff anticipates from Defendants is the unfounded assertion that Plaintiff's registration is somehow invalid. This argument is a red herring intended to distract the Court from the clear infringement of LCI, and, in any event, is now moot[4].

   (a)    The Subject Design's registration is valid

There is no question that the registration for the Subject Design is valid. A certificate of registration made before or within five (5) years of first publication of the registered work is *prima facie* evidence of the validity of the copyright.  17 U.S.C. §410(c); *S.O.S., Inc. v. Payday, Inc.* 886 F.2d 1081, 1085 (9th Cir. 1989) (citing *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980)).  It is also *prima facie* evidence of the validity of the facts stated in the certificate, including ownership, and shifts the burden to defendants to offer proof that these facts are false. 17 U.S.C. § 410(c); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,

---

[2] "In repeat" is a term of art meaning that a designer develops a design so that it looks consistent and proper as it is repeatedly printed across the bolts of fabric.

[3] Defendants may argue that PRINTEX somehow has lost its ownership rights in the Subject Design by indicating the incorrect copyright registration number in previous documents and the complaint. This argument is inequitable, and fails as discussed, *infra*.

[4] PRINTEX has now filed a FORM CA to amend the registration to only cover the design at issue in this case. Ex. 3.

345 F.3d 1140, 1144-45 (9th Cir. 2003); *see also N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) ("Under our copyright law, the registration of the copyright certificate itself establishes a prima facie presumption of the validity of the copyright in a judicial proceeding. . . .").

This presumption requires that the party challenging the registration prove that it is invalid. *United Fabrics Int'l, Inc. v. C&J Wear, Inc.,* 630 F.3d 1255 (9th Cir. Cal. 2011) (defendants' argument that plaintiff provided "no evidence" of validity of statement in a copyright registration fails because the copyright registration provides a presumption of validity that must be rebutted by defendants); *see also Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999)(alleged infringer responsible for rebutting presumption).[5]  In this case, all evidence establishes Plaintiff's ownership of the Subject Design. In contrast, there is no probative evidence to rebut the presumption of Plaintiff's ownership of a valid copyright.

To refute the validity of a copyright, the infringer must come forward with substantial evidence of fraud.  It is settled law that "inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless . . . the claimant intended to defraud the Copyright Office by making the misstatement."  *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997); *accord Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486-87 (9th Cir. 2000); see also Nimmer, § 7.20 (absent fraud, "a misstatement or clerical error in the registration application . . . should neither invalidate the copyright nor render the registration certificate incapable of supporting the infringement action").  "A party seeking to

---

[5] Courts in this Circuit have looked to the Second Circuit in analyzing copyright infringement, in the context of fabric designs.  As the Northern District of California observed in *Spectravest, Inc. v. Mervyn's, Inc.,* "Since the fabric industry is primarily based in New York, much of copyright litigation concerning fabric design has been centered in the Second Circuit.  An examination of decisions from the Second Circuit is helpful to the determination in this matter."  673 F. Supp. 1486, 1493 (N.D. Cal. 1987).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

establish a fraud on the Copyright Office, and thereby rebut the presumption of copyright validity, bears a heavy burden." *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) (citing Nimmer, § 7.20[B]).

Courts have traditionally treated innocent errors contained in an application for a registration certificate with leniency. Nimmer, § 7.20[B], n.18. It is all but settled law that an inadvertent error, even if material, will never preclude a copyright infringement action where the work would have been accepted for registration if the application contained a correct statement of facts. *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3rd Cir. 1990) ("that an inadvertent omission from a registration application will render a plaintiff's copyright incapable of supporting an infringement action has not gained acceptance with the courts"); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161–62 (1st Cir. 1994) ("It is well established that immaterial, inadvertent, errors in an application for copyright registration do not jeopardize the validity of the registration"); *Eckes v. Card Price Update,* 736 F.2d 859, 861-62 (2d Cir. 1984) ("Only the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid'") (quoting *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980, 988 (D.C.N.Y. 1980)); Nimmer, § 7.20[B], n.19 (a misstatement in the registration application does not "render the registration certificate incapable of supporting an infringement action").

This doctrine of leniency in connection with registration formalities is so established that most well-known treatises in the field adopt it unequivocally. Nimmer, § 7.20[B] ("The courts generally have been most lenient . . . with respect to any innocent error contained in an application for a registration certificate"); 1 Paul Goldstein, COPYRIGHT § 3.12.3, at 345 (1989) ("Courts have excused innocent errors or omissions affecting virtually every material aspect of a copyright registration application.").

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

This axiom was recently affirmed in *Jules Jordan Video, Inc. v. 144942 Canada Inc.,* 617 F.3d 1146, 1156 (9th Cir. 2010).  In this case, the Ninth Circuit overturned a ruling invalidating the plaintiff's registration. The District Court's ruling was made, in part, on the grounds that the registration set forth the wrong name for the author of the work. In reversing, the Circuit called the ruling "legally erroneous, inequitable and illogical" because no party other than the plaintiff had the right to claim ownership to the works, and no fraud on the Copyright Office was established. Id. at 1156.

Despite this clear doctrine, Plaintiff anticipates Defendant will attempt to characterize putative defects in Plaintiff's registration as "fraudulent"; however, the mark of fraud is whether Plaintiff is attempting to claim rights that it knew it did not possess.  In the instant matter, no party other than PRINTEX has the right to claim the artworks at issue, and there simply can be no claim of reliance or fraud. As such, this motion must be granted.

If the firm position taken by this Circuit is not enough, in 2008 Congress passed the Prioritizing Resources and Organization for Intellectual Property Act ("PRO-IP Act") in an effort to ensure that copyright infringement actions were not dismissed because of the harmless technical issues with copyright registrations.  17 U.S.C. §411.  This Act, in part, revised 17 U.S.C. § 411 to preclude dismissal of infringement actions when minor errors existed in the registration.  Specifically, it provides in relevant part that:

> (1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—
>
> *(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; **and***
>
> *(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.*

(2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b) (emphasis added).  This requirement is conjunctive – there must be intent to include inaccurate information and that inaccurate information must be so material as to result in a denial of the registration had it been made known.

In this case, there is no evidence whatsoever that anyone other than Plaintiff owns the Subject Design or that the Subject Design would have been rejected for registration by the Copyright Office when it was registered prior to the infringement. There is also no evidence of fraud or bad faith intent. So owing, there is no basis to challenge either PRINTEX's ownership of the Subject Design or the validity of that work's copyright registration, and the first element of "ownership" is ripe for summary adjudication.

**2.   LCI Infringed Plaintiff's Rights in the Subject Design**

LCI also violated PRINTEX's rights in the Subject Design. It directly infringed by distributing and importing the Infringing Product, and vicariously infringed though CSI's sales of the Infringing Product. Finally, it is liable as an alter ego for CSI's infringing conduct.

*(a)      Direct infringement – unlawful authorization*

LCI has violated provision the Copyright Act. This Act prohibits not only acts of infringement, but also the **authorization** of infringing acts. 17 U.S.C. § 106. This provision establishes liability of a party that "does no more than cause or permit another to engage in an infringing act." 3 David Nimmer & Melville B. Nimmer, Nimmer on Copyright §12.04A (2005) at 12-71-72.

Such authorization is grounds for copyright liability. The 1909 Copyright Act was amended in 1976 to add the words "to authorize" to 17 U.S.C. §106. "The

- 10 -

addition of the words "to authorize" in the 1976 Act appears best understood as merely clarifying that the Act contemplates liability for contributory infringement, and that the bare act of "authorization" can suffice." *Subafilms, Ltd. v. MGM-Pathe Communications, Co*., 24 F. 3d 1088, 1093(9th Cir. 1994).

The legislative history of the 1976 Copyright Act confirms the above by stating in part:

> The exclusive rights accorded to a copyright owner under section 106 are "to do and to authorize" any of the activities specified in the five numbered clauses. Use of the phrase "to authorize" is intended to avoid any questions as to the liability of contributory infringers.

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 61, reprinted in 1976 U.S.C.C.A.N. 5659, 5674 (emphasis added).

Courts have interpreted this amendment to confirm the liability of a party that does not directly sell the infringing goods. *Itsi TV Productions v. Cal. Auth. of Racing Fairs*, 785 F. Supp. 854, 860 (E.D. CA 1992). ("Given the new language of the statute and the statute's legislative history it appears to this court that Congress created a new form of "direct" infringement when it amended the Act to include the words "to authorize," and that individuals may be contributorily or vicariously liable for such direct acts of infringement.")

The Court has confirmed the liability of a party that only authorizes or permits an infringing act, finding that "Congress' use of the phrase `to authorize' establishes the liability, whether vicarious or as a contributory infringer, of one who does no more than cause or permit another to engage in an infringing act. […] This position appears well-taken." Id., citations omitted.

Given the above, it is now settled law that "an infringer is not merely one who uses a work without authorization by the copyright owner, but also one who authorizes the use of a copyrighted work without actual authority from the copyright

owner." *Sony Corp. of America v. Universal City Studios, Inc*., 464 U.S. 417, 104 S.Ct. 774, 785 n. 17, 78 L.Ed.2d 574 (1984).

In its discovery responses, LCI concedes that it not only authorized the infringing acts of CSI, but **directly contributed** to them by designing and providing the Infringing Product to CSI. Specifically, LCI admitted that its designer, Shannon Duchemin, is the party responsible for creating the Infringing Product. Ex. 7, No. 20. It also admitted that it provided the product at issue to CSI in the United States. Id. No. 7; Ex. 6, Nos. 21, 22. In designing the infringing product and providing it for CSI to sell to the public in the United States, LCI has clearly authorized or permitted CSI to commit copyright infringement. This goes far beyond what is required for liability under 17 U.S.C. §106.

In addition, LCI took action outside of the United States – designing and shipping the infringing goods – that resulted in infringement within the United States – the sales of the infringing goods by CSI. This conduct alone is sufficient to establish LCI's liability for copyright infringement. *Cable/Home Communication Corp. v. Network Prods., Inc*. 902 F.2d 829, 846 (11th Cir. 1990)(defendants were held liable for copyright infringement for acts that took place outside of the U.S. that resulted in infringement within the U.S. borders); <u>see</u> <u>also</u> *GB Marketing USA, Inc. v. Gerolsteiner Brunnen GmbH & Co*., 782 F. Supp. 763, 773 (W.D.N.Y 1991)(holding actionable acts that occurred in Germany that were intended to produce an effect in the U.S.). LCI is liable for the infringing sales by CSI in the U.S.

*(b)    Direct infringement – importation, distribution, purchase, and sales*

As discussed above, LCI is directly liable for authorizing and contributing to the infringing conduct, as well as distributing and importing the Infringing Product. CSI is also directly liable for purchasing and selling the Infringing Product. In order to prove direct liability, Plaintiff must show that the LCI, CSI, or its manufacturer, had a reasonable opportunity to view the Subject Design, or that the designs are so strikingly similar that access can be presumed.  *Three Boys Music Corp.,* 212 F.3d at

- 12 -

483;  *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir.1995)(when two designs are "so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access."), *citing Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir.1996) and *Baxter,* 812 F.2d at 424, n. 2 ("Proof of striking similarity is an alternative means of proving `copying' where proof of access is absent"), *cert. denied*, 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987); *Selle v. Gibb*, 741 F.2d 896, 903 (7th Cir. 1984) (a striking similarity is one sufficiently unique or complex as to make it unlikely that it was independently created).

To establish "striking similarity" "plaintiffs must demonstrate that `such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source.'" *Testa v. Janssen*, 492 F.Supp. 198, 203 (W.D.Pa.1980) (quoting *Stratchborneo v. Arc Music Corp.*, 357 F.Supp. 1393, 1403 (S.D.N.Y.1973)); see also *Stewart v. Wachowski*, 574 F. Supp. 2d 1074 (C.D.C.A. 2005)("to prove that certain similarities are `striking,' plaintiff must show that they are the sort of similarities that cannot satisfactorily be accounted for by a theory of coincidence, independent creation, prior common source, or any theory other than that of copying. The similarities should be sufficiently unique or complex as to make it unlikely that both pieces were copied from a prior common source, ... or that the defendant was able to compose the accused work as a matter of independent creation"), quoting *Selle*, 741 F.2d at 904. The designs in this case are strikingly similar, if not identical.

i.      *The designs are strikingly similar*

In this case, there is no question that the designs are so similar that it is simply not possible that LCI's design could have been created without copying. The designs are very complex, with numerous detailed elements, and the marked similarities between the two can only lead to the conclusion that the design on Defendants' garments was copied from the Subject Design. As such, this Motion must be granted.

- 13 -

In addition, LCI has admitted that there is no evidence of "independent creation, or common source." *Testa*, 492 F. Supp at 203. As such, its only argument is that the similarities are a "coincidence." Id. There is no question, given the complex nature of the design, and the near-identical similarity, that this is not a coincidence. If it is not clear, the physical garments and fabric swatches will be produced at time of hearing on this motion, or earlier if deemed necessary by the Court.

While it not necessary for this motion to be granted, PRINTEX can also show that LCI also had a reasonable opportunity PRINTEX printed over 20,000 yards of fabric bearing the design at issue, and started distributing that fabric in December of 2005. LCI, or its manufacturer, could have accessed this design in a number of ways, including by simply purchasing a lawfully-printed garment bearing the Subject Design at a retail store.

In addition, LCI has admitted that it does not know from where it obtained the design on the Infringing Product, and has offered no indication that it obtained it from a legitimate source. This militates in favor of finding infringement.

### ii.   Copying is evident

The Infringing Product bears substantially similar unauthorized reproductions of the Subject Design. The copying is so clear that LCI has conceded that its design is substantially similar to the Subject Design. Ex. 8.

LCI was forced to concede this point because if an "average lay observer would recognize the alleged copy as being appropriated from the copyrighted work," then the requisite similarity exists to establish infringement. *Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1093 n.4 (2d Cir. 1977). The Ninth Circuit employs a bifurcated test for substantial similarity – consisting of an extrinsic test and an intrinsic test. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977). The "extrinsic test" is an objective comparison of specific expressive elements. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822

- 14 -

(9th Cir. 2002). The "intrinsic test" is a subjective comparison that focuses on "whether the ordinary, reasonable audience" would find the works substantially similar in the "total concept and feel of the works." *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (internal quotation marks and citation omitted). In this case, the designs are so similar that a brief review reveals that they satisfy both tests. The specific elements are one and the same, and the overall look of the designs is strikingly similar.

   If an "average lay observer would recognize the alleged copy as being appropriated from the copyrighted work," then the requisite similarity exists to establish infringement. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc*., 684 F.2d 821, 829 (11th Cir.1982). The only conclusion a trier of fact can reach after reviewing the designs is that the "feel" and "expression" of the works undoubtedly "evoke a feeling of sameness." *JBJ Fabrics, Inc. v. Mark Indus., Inc.*, No. 86-4881 FFF, 1987 U.S. Dist. LEXIS 13445, at *9 (C.D. Cal. Nov. 4, 1987). As such, it must be found that LCI's design is copied from the Subject Design.

   Given the above, it is clear that LCI's distribution and importation the Infringing Product violated17 U.S.C. § 602 and renders LCI liable for direct copyright infringement. CSI's sales of these same goods also directly violated the Copyright Act.

### (c)   Vicarious liability

   LCI is vicariously liable for CSI's sales of the Infringing Product. Vicarious liability is grounded in the tort concept of respondeat superior. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2nd Cir.1971). It is clear in this case that LCI is responsible for the infringing sales made by CSI.

   LCI is liable for vicarious infringement because it "profit[ed] from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 US 913, 930-931 (2005). The directly infringing activity in this case was the purchase, distribution, and sales of the

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

infringing product by CSI in the United States. LCI profited from CSI's sales because CSI is a wholly-owned subsidiary of LCI that LCI controls and for which LCI creates policy. CSI operates stores under the name "Le Chateau" that sell "le chateau" product. It is clear that LCI is thus vicariously liable for CSI's infringement.

A parent company may be vicariously liable for the infringing acts of another when two prerequisites are met: (1) the defendant has the right and ability to supervise the infringing activity of another; and (2) the defendant has an obvious and direct financial interest in exploitation of the copyrighted materials. *Gershwin*, 443 F.2d at 1161-62; see also *Southern Bell Tel. & Tel. v. Association Tel. Directory*, 756 F.2d 801, 811 (11th Cir.1985); *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co*., 845 F.2d 773, 781 (8th Cir.1988); *Columbia Pictures Inc. v. Redd Horne, Inc*., 749 F.2d 154, 160-61 (3d Cir.1984); *Shapiro, Bernstein & Co. v. H.L. Green Co*., 316 F.2d 304, 307 (2d Cir.1963). LCI clearly has a financial interest in the sales of its wholly-owned and controlled subsidiary.

The 9th Circuit clearly endorses this approach. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1553 (9th Cir. 1989) *cert. denied*, 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990) (parent corporation may be liable for infringement committed by its subsidiary if there is a substantial and continuing connection between the two with respect to the infringing acts).

It is important to note that for purposes of vicarious liability, one **need not have knowledge** that the direct infringer is engaging in infringing conduct to be held vicariously liable. *Gershwin*, 443 F.2d at 1162 ; 3 Nimmer § 12.04[A], at 12-63 n. 14 (collecting cases).

LCI has admitted that it has a direct relationship with CSI – indeed, it conceded it wholly owns CSI, shares executives with Chateau, and has the right to exercise control over CSI's policies – and has further admitted that LCI designed and provided to CSI the garments and bags at issue in this case. As set forth above, it is

- 16 -

irrelevant whether LCI knew that CSI's sales were infringing. As such, LCI is vicariously liable for CSI's sales of the infringing product in the U.S.

Indeed, one court has explicitly held that the legal relationship between parent and subsidiary, **by itself**, always satisfies the test for vicarious infringement[6]. *Broadcast Music, Inc. v. Hartmarx Corp.*, 9 U.S.P.Q.2d 1561, 1562, 1988 WL 128691 (N.D.Ill.1988). In other words, even if the parent was not involved in the infringing acts of its subsidiary, the parent would still be vicariously liable.

Here, the parent corporation was **directly** involved in the subsidiary's infringing conduct. This involvement is all but dispositive on the question of vicarious liability. *Frank Music Corp.,* 110 S.Ct. 1321, 108 L.Ed.2d 496 (a parent will be vicariously liable for the infringing acts of a subsidiary if "there is a substantial and continuing connection between the two with respect to the infringing acts."); *Peter Pan Fabrics, Inc. v. Acadia Company*, 173 F.Supp. 292, 298 (S.D.N.Y.1959), *aff'd*, 274 F.2d 487 (2d Cir. 1960) (finding vicarious liability because "[t]he cumulative proof points ... to the conclusion that [the parent] was

---

[6] The *Broadcast Music* Court stated:
 "We also find as a matter of law that [the parent] has the right and ability to supervise its subsidiaries — that is, to guard against or police the allegedly infringing activity. Our conclusion rests in part on the legal relationship between [the parent] and its subsidiaries. Because [the parent] owns a controlling interest in the subsidiaries, it elects the Board of Directors, who in turn select each subsidiary's officers. Control over the Board, then, in effect equals control over the subsidiaries' officers. Since the officers run the day-to-day affairs of the subsidiary, control of those officers in turn equals the right to control even the day-to-day matters of the subsidiary. Though [the parent] makes much of the fact that it merely makes "recommendations" to the subsidiaries' CEOs and that the CEOs do not always comply, it cannot be disputed that if a CEO refuses to "cooperate," [the parent] can simply, through its power over the Board, have her removed. Thus, it is clear to us that [the parent] has the right to supervise its subsidiaries' activities — down to a subsidiary's unlicensed use of copyrighted music — through its power to remove recalcitrant officers. It is the existence of the right to supervise, not whether [the parent] in fact chose to exercise that right, that is at issue." 9 U.S.P.Q. at 1562.

1    substantially connected with the infringing transaction and the course of conduct

2    sought to be enjoined.").

3         In *Blue Ribbon Pet Products v. Rolf C. Hagen*, for example, the court held a

4    Canadian parent company secondarily liable for its subsidiary's infringement of

5    copyrighted materials when the parent company had oversight and involvement with

6    the subsidiary.  66 F. Supp. 2d 454 (E.D.N.Y. 1999).

7         The same is true here. It is undisputed that LCI, a Canadian parent company,

8    had a "substantial and continuing connection" with CSI in regard to the infringing

9    acts. Indeed, LCI has admitted that it "controls" CSI, that it has the power to dictate

10   CSI's policies. Finally, and most importantly, LCI admits that it was responsible for

11   designing the Infringing Product and then distributing it to CSI to sell to the public in

12   the United States. These sales in the United States **are** the infringing acts, and LCI is

13   vicariously liable for same.

14              (d)    *Alter ego liability*

15        LCI is also liable as the "alter ego" of CSI[7]. One entity is considered the "alter

16   ego" of a corporation when the entity so dominates the corporation and completely

17   disregards the corporation's separate identity that the entity primarily transacts its

18   own business rather than that of the corporation. *See Thomson-CSF, S.A. v. American

19   Arbitration Ass'n,* 64 F.3d 773, 777 (2d Cir.1995); *Gartner v. Snyder,* 607 F.2d 582,

20   586 (2d Cir.1979).

21

22   _____

23   [7] Plaintiff names Does 1-10 in the complaint, and in paragraph 8 alleges that "each of

24   the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego,
     and/or employee of the remaining Defendants and was at all times acting within the

25   scope of such agency, affiliation, alter-ego relationship and/or employment; and
     actively participated in or subsequently ratified and adopted, or both, and and all of

26   the acts or conduct alleged, with full knowledge of each and every violation of

27   Plaintiff's rights and damages to Plaintiff proximately caused thereby."

28

Determining whether an alter ego relationship exists is a fact-specific inquiry that varies depending upon the totality of circumstances. *Thomson-CSF,* 64 F.3d at 777-78; *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). Relevant factors to consider include whether the entities share a common office and staff, are run by common officers, intermingle funds, fail to deal at arms' length with each other, and are not treated as separate profit centers. *Wm. Passalacqua Builders Inc. v. Resnick Developers S., Inc.,* 933 F.2d 131, 139 (2d Cir.1991). LCI admits that it shares staff, are run by common officers, and that LCI provides SCI with product to sell. This is sufficient to establish liability.

A wholly-owned subsidiary's contacts may be imputed to the parent where the subsidiary was "either established for, or is engaged in, activities that but for the existence of the subsidiary, the parent would have to undertake itself. *Chan v. Society Expeditions, Inc*., 39 F.3d 1398, 1405-1406 (9th Cir. 1994). If the CSI subsidiary – which runs "Le Chateau" retail stores that sell "le chateau" product – did not exist, LCI would have had to directly sell the garments and bags at issue. This is sufficient to impute liability.

 Even if it weren't, LCI has admitted that it wholly-owns CSI, that LCI and CSI share a common staff, that LCI controls CSI, and that LCI has the authority to dictate CSI's policies. This meets the requirements for alter ego liability to apply, and this issue is ripe for summary adjudication.

## IV.   SUMMARY ADJUDICATION IS APPROPRIATE

LCI has infringed the Subject Design directly by authorizing the infringing acts and importing and distributing the Infringing Product, and vicariously and as an alter ego by selling the Infringing Product through CSI. PRINTEX has discharged the obligations as set forth in Fed.R.Civ.P. 56. As such, PRINTEX respectfully requests that the Court summarily adjudicate one or more of the following issues:

1)  Plaintiff owns a valid copyright for the Subject Design;

2)  LCI liable for copyright infringement due to their authorization of infringing acts, purchase, distribution, importation, and/or sales of the Infringing Product;

3)  LCI is vicariously liable for copyright infringement based on CSI's purchase, distribution and/or sales of the Infringing Product; and

4)  LCI is liable as an alter ego for copyright infringement based on CSI's purchase, distribution, and/or sales of the Infringing Product.

In the alternative, PRINTEX respectfully requests that this Court transfer this action to the Southern District of New York for entry of judgment or further proceedings, for the reasons set forth in PRINTEX's Motion to Transfer.

Respectfully submitted,

DONIGER / BURROUGHS

DATED: May 13, 2011                    By: /S/ Scott A. Burroughs
                                       Scott A. Burroughs, Esq.
                                       Attorneys for Plaintiff
                                       L.A. Printex Industries, Inc.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

<u>DECLARATION OF JAE NAH</u>

I, Jae Nah, declare that I am of the age of majority, have personal knowledge of the following, except for those matters stated on information and belief, and state that if called as a witness I could and would competently testify as follows:

1.  I am the president of L.A. Printex Industries, Inc. ("L.A. Printex"), Plaintiff in this action. I have reviewed the documents and records relevant to this action, and I provide this Declaration from my personal knowledge.

2.  PRINTEX is a Los Angeles-based design company. It creates original textile designs, or purchases the exclusive rights to designs that are created by reputable art studios.  At the time of the infringement it was critical to PRINTEX's business to be the exclusive source of its designs because this design portfolio allowed it to stand out in the market and compete against other companies that charged lower rates but were unable to offer trendy, fashion-forward designs.

3.  PRINTEX owns the rights to an original work of art depicting interlaced geometric elements and latticework imagery. I have attached a true and correct copy of said design as Exhibit 1. PRINTEX has entitled this work "E50193" ("Subject Design").  It was created by PRINTEX's design team under the supervision of Jae Nah, the head of the design team.

4.  The Subject Design was finalized by PRINTEX and then prepared and formatted for use on textiles. The Subject Design at all relevant times was exclusively owned by PRINTEX. It was then registered with the United States Copyright Office on December 19, 2005, where it was assigned U.S. Copyright No. VA 1-344-916. I have attached a true and correct copy of this registration as Exhibit 2.

5.   In registering Subject Design, PRINTEX deposited a copy of the Subject Design with the Copyright Office.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

6.    After LCI objected to the form of the registration, PRINTEX submitted a FORM CA removing all designs from the registration except for the Subject Design. I have submitted a true and correct copy of this FORM CA as Exhibit 3.

7.    Starting on December 23, 2005, PRINTEX sampled and sold over twenty thousands of yards of fabric bearing the Subject Design to its customers. I have attached a true and correct copy of our sales summary for product bearing the Subject Design as Exhibit 4.  Most of these customers are fabric converters[8] that had fabric printed with the Subject Design for garment manufacturers.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 9th day of May, 2011 at Los Angeles, California.

By: _____
JAE NAH
Declarant

---

[8] A "fabric converter" is a company that acts as a middle-man between the printing mill and the garment manufacturer.  It generally takes designs (sometimes that it owns, sometimes that the printing mills owns, and sometimes public domain designs) to show its customers in the hopes of securing orders.  While it is obligated to bring printing orders for designs owned by a printing mill back to that mill, converters have certainly been known to send proprietary designs overseas to have them "knocked off" – sometimes ordering the overseas mill to change them slightly, where they would otherwise lose a sale because of the higher price of printing domestically.

## <u>DECLARATION OF SCOTT A. BURROUGHS, ESQ.</u>

I, Scott A. Burroughs, Esq., declare that I am at least 18 years old and am competent to make the testimony set forth below. I am a shareholder at DONIGER / BURROUGHS APC, attorneys for Plaintiff in this action. I make this declaration in support of Plaintiff's Motion for Summary Adjudication. If called as a witness I could and would competently testify as follows:

1.   LCI has stipulated that the designs are substantially similar. I have attached as Exhibit 8 a true and correct copy of the stipulation attesting to same.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 13th Day of May, 2011, at Culver City, California.


By:   <u>/S/ Scott A. Burroughs   </u>
Scott A. Burroughs, Esq.