Celine Crosa Di Vergagni (Bar No. CC1979)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
celinecrosa@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100

David W. Quinto (admitted *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
davidquinto@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Defendant
Le Château, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| L.A. PRINTEX INDUSTRIES, INC., a California Corporation,<br><br>                    Plaintiff,<br><br>     vs.<br><br>LE CHÂTEAU, INC., a Canadian Corporation; and DOES 1-10,<br><br>                    Defendants. | 11 CIV. 4248 (LTS)(JLC) |

# LE CHÂTEAU, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF LAW ................................................................................................1

PRELIMINARY STATEMENT .........................................................................................1

STATEMENT OF FACTS ..................................................................................................2

ARGUMENT .......................................................................................................................5

I.   SUMMARY JUDGMENT STANDARD ................................................................5

II.  THE COMPLAINT HEREIN SHOULD BE DISMISSED BECAUSE
     THE COURT LACKS SUBJECT MATTER JURISDICTION...............................5

     A.  A Work Registered as Part of a Published Collection Must Have
         Been Published as Part of that Collection.....................................................5

     B.  Plaintiff Refused to Provide Evidence that Its Patterns Were
         Published as a Collection. ..............................................................................7

     C.  Plaintiff Has Now Admitted that Its Registration Application
         Averments Were "Incorrect."..........................................................................9

III. PLAINTIFF HAS NOT CURED THE JURISDICTIONAL DEFECT. ................10

IV.  THE ALLEGED INFRINGEMENT WAS DE MINIMIS AND, HENCE,
     IS NOT ACTIONABLE ..........................................................................................11

V.   LE CHÂTEAU SHOULD BE AWARDED ITS COSTS AND
     ATTORNEYS' FEES ..............................................................................................12

CONCLUSION..................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................. 5

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548 (1986) ........................................................................ 5

*Crescent Publishing Group v. Playboy Enterprises, Inc.*,
    246 F.3d 142 (2d Cir. 2001) ..................................................................................... 13

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 ............................................................................................................. 12

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*,
    498 U.S. 426, 111 S. Ct. 858 (1991) ........................................................................ 10

*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
    421 F.3d 199 (3d Cr. 2005) ....................................................................................... 6

*L.A. Printex Industries, Inc. v. Aeropostale, et al.*,
    No. CD 08-07085 DDP (Ex),
    2010 WL 2813800 (C.D. Cal. May 5, 2010) ............................................................. 6

*La Resolana Architects, P.A. v. Clay Realtors Angel Fire*,
    416 F.3d 1195 (10th Cir. 2005) ............................................................................... 10

*Lieb v. Topstone Industries, Inc.*,
    788 F.2d 151 (3d Cir. 1986) .................................................................................... 12

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*,
    903 F.2d 1486 (11th Cir. 1990) ............................................................................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .................................................................................................. 5

*Mobil Oil Corp. v. Kelley*,
    493 F.2d 784 (5th Cir. 1974) ................................................................................... 10

*Mollan v. Torrance*,
    22 U.S. (9 Wheat.) 536, 6 L. Ed. 154 (1824) .......................................................... 10

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826, 109 S. Ct. 2218 (1999) ...................................................................... 10

*Newton v. Diamond*,
    388 F.3d 1189 (9th Cir. 2004) ................................................................................. 11

*Nuclear Engineering Co. v. Scott*,
    660 F.2d 241 (7th Cir. 1981) ................................................................................... 10

*Reed Elsevier Inc. v. Munchnick,*
  559 U.S. ___, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010) ................................................11

*Stevenson v. Union Pacific Railroad Co.,*
  354 F.3d 739 (8th Cir. 2004) .............................................................................................9

*United Fabrics International, Inc. v. C&J Wear, Inc.,*
  630 F.3d 1255 (9th Cir. 2011) .......................................................................................6, 7

## Statutes/Rules

37 C.F.R. § 202.3(b)(4) ...............................................................................................................6

17 U.S.C. § 101 ............................................................................................................................6

17 U.S.C. § 411(a) .....................................................................................................................10

17 U.S.C. § 505 ..........................................................................................................................12

28 U.S.C. § 1338(a) .....................................................................................................................5

Fed. R. Civ. P. 1 ...........................................................................................................................5

Fed. R. Civ. P. 56(c) ....................................................................................................................5

Fed. R. Evid. 201 .........................................................................................................................7

## Other Authorities

*Compendium II of Copyright Office Practices* § 1504.04 .................................................11

*Compendium II of Copyright Office Practices* § 1508(B) ..................................................11

## MEMORANDUM OF LAW

### Preliminary Statement

If, as here, a copyright infringement plaintiff alleges that a single published work registered only as part of a published *collection* has been infringed, the plaintiff must show that the registered works were in fact offered for sale *as a collection*. Otherwise, a court lacks subject matter jurisdiction to hear the claim. The reason why is obvious. The plaintiff cannot invoke the jurisdiction of the federal courts on the basis that it has a collective work copyright if its work is not a collective work.

Because they had lost other cases for precisely this reason, plaintiff and its counsel attempted to suppress evidence that the copyright at issue was registered only as part of a collective work. The registration is for a collection of 12 works. For that reason, plaintiff refused to allow discovery of evidence that would have revealed how that the 12 patterns were marketed. Unless the patterns were published as a collection, no federal court has subject matter jurisdiction to hear plaintiff's copyright claims. Those claims must therefore be dismissed for this reason alone.

After defendant Le Château, Inc. first brought its Motion on April 22, 2011, plaintiff filed an application for a Supplementary Registration with the United States Copyright Office on May 5, 2011, in which it admitted that the various patterns jointly registered as a "published work" pursuant to the Certificate of Registration at issue herein "may have been published separately."[1] Accordingly, plaintiff is no longer entitled to rely on any presumption that the patterns subject to the Copyright Registration alleged in the Complaint were, in fact, published as part of a collection. Moreover, even if a Supplementary Registration ultimately issues, plaintiff's claim will nonetheless be barred because, as provided in Section 1504.08(b) of the *Compendium II of Copyright Office*

---

[1] Le Château's motion was declared moot by the United States District Court for the Central District of California on June 20, 2011, when the action was transferred to this Court.

*Practices* published by the United States Copyright Office, "Information contained in a supplementary registration *augments but does not supersede* the basic registration." (Emphasis supplied.) Accordingly, plaintiff cannot retroactively alter the fact that subject matter jurisdiction was lacking when it filed its complaint in 2010.

Moreover, if plaintiff had published the 12 patterns it registered as a collection, Le Château would not be liable for infringement as a matter of law because it is alleged to have copied only a single pattern - as opposed to the collection - comprising just 8.5 percent of the collection. To prove infringement, a copyright plaintiff must prove that the defendant's work is "substantially similar" to its own, but plaintiff cannot do that. By definition, Le Château's work is 91.5 percent different from the collection at issue.

Finally, the award of costs and attorney's fees is appropriate because plaintiff knew that its claims were meritless long before it filed suit.

### Statement of Facts

Defendant Le Château, Inc. is a Canadian corporation with its principal place of business in Montréal, Quebec, Canada. It operates retail stores throughout Canada and a wholly-owned subsidiary owns two stores in New York. Plaintiff first filed suit against Le Château in Canada, alleging that Le Château had infringed several fabric patterns that plaintiff claims to have originated. (With respect to one such pattern, Le Château has submitted evidence showing that it *printed* the pattern *before* plaintiff claims to have created it.) After taking discovery of Le Château in Canada, plaintiff sued it in California solely because its subsidiary's two New York stores had sold 77 garments and 7 tote bags printed with one of the patterns in issue in the Canadian litigation, earning the subsidiary a profit of a few hundred dollars.[2]

---

[2] Declaration of David W. Quinto dated August __, 2011 ("Quinto Dec."), ¶ 3 and Exhibit A thereto in Response to Interrogatory No. 9.

Plaintiff's complaint, filed June 9, 2010, alleges just two claims: copyright infringement and vicarious and/or contributory copyright infringement. Paragraph 10 of the complaint alleges that the textile design pattern at issue was registered with the United States Copyright Office pursuant to Certificate of Registration No. VA 1-344-916. The Registration Certificate, attached as Exhibit 2 to the Complaint, reflects that it was issued December 19, 2005, for "Ethnic (Group 12)." The copyright registration certificate recites that Ethnic (Group 12) was published December 7, 2005.

Because Plaintiff attached a copy of but one pattern subject to the copyright registration at issue to the Complaint, beginning in the summer of 2010 Le Château repeatedly requested of plaintiff's counsel that it be permitted to inspect the registration materials. However, all such requests were refused.[3]

On March 9, 2011, Le Château served its First Request for Production of Documents and Things, seeking to discover what textile design patterns are subject to the copyright registration certificate at issue herein. On April 8, 2011, plaintiff served its responses, but did not produce any documents, instead advising Le Château that the responsive documents could be examined at the offices of plaintiff's counsel on April 19, 2011, at 11:00 a.m. When the documents were ultimately produced, they consisted of 33 pages, of which the purported copyright registration materials constituted just 3 pages. The copyright registration materials had been sanitized to remove evidence of the 11 other patterns subject to the copyright registration.[4]

Le Château independently engaged a copyright search service to obtain a deposit copy of the certificate of copyright registration at issue at a cost of almost $900. That certificate, attached to the Quinto Declaration as Exhibit H, reflects not just the 1 pattern

---

[3] Quinto Dec., ¶ 4.
[4] Quinto Dec., ¶¶ 4, 6-8 and Exhibits B, E and G thereto.

that plaintiff disclosed in its responses to Le Château's First Set of Requests for Production of Documents and Things, but 12 patterns.[5]

On March 10, 2011, Le Château served its Second Request for Production of Documents and Things and First Set of Interrogatories. They were directed at discovering how and when plaintiff published the textile design pattern subject to the copyright registration certificate at issue. On April 12, 2011, plaintiff untimely served its responses and, notwithstanding that any objections were waived by its failure to timely respond, plaintiff refused to provide any information concerning how the 11 other textile design patterns subject to its copyright registration certificate were marketed or sold.[6] Accordingly, plaintiff has failed to come forward with any evidence that the textile design patterns subject to its collective copyright registration were published *as a collection*.

On April 22, 2011, Le Château filed a motion in the United States District Court for the Central District of California seeking summary judgment on grounds substantially similar to those advanced now. On May 5, 2011, Plaintiff submitted an application for Supplementary Registration to the United States Copyright Office in which it identified "Incorrect Information in Basic Registration." The Basic Registration referred to was Certificate of Registration No. VA 1-344-916, issued December 19, 2005, and attached to Plaintiff's complaint herein as Exhibit B. That "Basic Registration" is the registration on which Plaintiff relies for its contention that the federal courts have subject matter jurisdiction to hear its complaint. However, the Supplementary Registration noted that the work at issue "may have been published separately," and not as part of a collection, and sought to delete the registrations of the 11 other patterns registered pursuant to Certificate No. VA 1-344-916. Plaintiff has never provided any evidence that the

---

[5] Quinto Dec., ¶ 9.
[6] Quinto Dec., ¶¶ 5, 9-11 and Exhibits C-D and Exhibits J-K thereto.

Copyright Office has either granted or denied its application for a Supplementary Registration, and has never provided evidence that it even paid the required fees.[7]

### Argument

I. <u>**SUMMARY JUDGMENT STANDARD**</u>

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986) (quoting *Fed. R. Civ. P.* 1). Summary judgment should be entered when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Under *Celotex*, Le Château need not negate plaintiff's claims if it can show that plaintiff cannot meet its burden to prove them. Moreover, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

II. <u>**THE COMPLAINT HEREIN SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION**</u>

    A. <u>**A Work Registered as Part of a Published Collection Must Have Been Published as Part of that Collection.**</u>

This Court would have subject matter jurisdiction over plaintiff's copyright claims only if those claims arose under the U.S. Copyright Act. *See* 28 U.S.C. § 1338(a). As reflected in the copyright registration certificate attached as Exhibit 2 to plaintiff's complaint, the pattern at issue was registered as part of a *published* work compromising

---

[7] Quinto Dec., ¶ 14 and Exhibit P thereto.

12 patterns. As explained below, that registration is invalid because the 12 patterns were not, in fact, published as a collection. Because the registration is invalid, the Court lacks subject matter jurisdiction to hear plaintiff's claims.

That rule was explained by the Third Circuit in *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 205 (3d Cr. 2005), and followed by the Ninth Circuit in a case argued by *plaintiff's* counsel herein, Scott Burroughs. In *United Fabrics International, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011), the Ninth Circuit held that:

> When one registers a collection of works in a single copyright, it can be registered either as a "published" or an "unpublished" collection. 37 C.F.R. § 202.3(b)(4). A necessary element of a published-collection copyright is that the collection is sold, distributed or offered for a sale concurrently. *Id.*; 17 U.S.C. § 101.

*Id.* at 1258-59.

Plaintiff and its counsel were aware of the legal requirement that the 12 patterns be published as a collection well in advance of the Ninth Circuit ruling. For example, *before this case was filed,* in *L.A. Printex Industries, Inc. v. Aeropostale, et al.*, No. CD 08-07085 DDP (Ex), 2010 WL 2813800 (C.D. Cal. May 5, 2010), Judge Dean D. Pregerson of the Central District of California granted summary judgment against plaintiff based on that very issue. In doing so, Judge Pregerson noted that L.A. Printex "relies on its registration of Geometric (Group 4)—a group that contains, among other patterns, the G70132 pattern at issue in this case—to satisfy the registration element of its copyright registration claim." Citing *Kay Berry,* 421 F.3d at 205, Judge Pregerson observed that the "single work registration requires . . . that all of the self-contained works be 'included in a single unit of publication' and share the same copyright claimant." Judge Pregerson found, however, that L.A. Printex "sold fabric bearing G70132 designs separately from other designs in Geometric (Group 4)." He thus concluded that L.A. Printex had "not produced competent evidence establishing that it

holds a valid copyright registration for the G70132 pattern" and therefore could not, "as a matter of law, prevail on its copyright infringement claim."[8]

Even before that, Judge James V. Selna of the Central District of California ruled against Mr. Burroughs' client on that issue as well. In *United Fabrics International, Inc. v. C&J Wear, Inc.*, No. CV-08-1085 JVS (AJWx), Docket No. 148 (C.D. Cal. Aug. 18, 2009), Judge Selna rejected the textile printer's argument that, "A single publication requirement is unworkable for designs because customers come in sporadically, and may or may not be interested in all of the designs in a copyright." Judge Selna observed that the foregoing argument "ignores the fact that [a fabric pattern designer] has control over what it publishes, when, and to whom." Because the various patterns subject to the copyright registration were not published as a collective work, Judge Selna held that the plaintiff did "not have standing to allege copyright infringement of the subject matter, which must be independently registered before this claim can be asserted."[9]

### B. Plaintiff Refused to Provide Evidence that Its Patterns Were Published as a Collection.

Seeking evidence concerning whether the 12 patterns subject to the copyright registration at issue were, in fact, published as a collection, Le Château propounded two sets of document requests on plaintiff, as well as one set of interrogatories.[10] Le Château's First Request for Production of Documents and Things contained just five requests. The first three requests sought production of:

---

[8] Le Château requests that the Court take judicial notice of the date, existence and reasoning of Judge Pregerson's Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Partial Summary Judgment in *Aeropostale*. See Fed. R. Evid. 201. A true and correct copy of Judge Pregerson's Order is attached to the Quinto Declaration as Exhibit L.

[9] Le Château requests that the Court take judicial notice of the date, existence and reasoning of Judge Selna's Order Denying Plaintiff's Motion for Summary Adjudication and Dismissing Action dated August 18, 2009, in *C&J Wear*. See Fed. R. Evid. 201. A true and correct copy of that order is attached to the Quinto Declaration as Exhibit M.

[10] Quinto Dec., ¶¶ 4-5 and Exhibits B-D thereto.

- The deposit copy of YOUR COPYRIGHT registration application.
- All DOCUMENTS you sent to or received from the United States Copyright Office in connection with the registration of YOUR COPYRIGHT.
- Copies of all designs subject to YOUR COPYRIGHT registration.[11]

Plaintiff's written responses to those requests were identical:

> Objection: Vague, calls for legal conclusion. This has been or will be produced.[12]

Plaintiff nowhere indicated that any documents were being withheld. Nevertheless, plaintiff did withhold critical documents.

Attached to the Quinto Declaration as Exhibit F is the complete set of documents produced by plaintiff in response to Le Château's First Set of Requests for Production. The purported copyright registration materials appear on the pages marked by plaintiff as P28-P30.[13]

Knowing that plaintiff might refuse to produce the complete copyright registration materials, Le Château independently ordered a certified copy of them at a cost of almost $900.[14] A true and correct copy of the certified copy of the registration materials is attached to the Quinto Declaration as Exhibit H. In contrast to the registration materials produced by plaintiff that purport to show the registration of but 1 pattern, the certified copy reflects that 12 distinct patterns were registered.

---

[11] Quinto Dec., ¶ 4 and Exhibit B thereto.
[12] Quinto Dec., ¶ 6 and Exhibit E thereto. The response to the third request actually stated that: "This has been or will be produced for inspection upon reasonable notice."
[13] Quinto Dec., ¶ 8 and Exhibit G thereto at 62-64.
[14] Quinto Dec., ¶ 9 and Exhibit H thereto. Le Château's belief that plaintiff would likely fail to respond to its discovery requests truthfully was based, in part, on its counsel's experience having plaintiff's principal, Jae Nah, held in contempt of court by Judge George H. King for backdating a critical document and submitting a perjurious declaration to hide his conduct. See Quinto Dec., ¶ 10 and Exhibit I thereto.

Unsurprisingly, plaintiff refused to produce any evidence at all concerning its purported publication or sale of the 11 additional patterns subject to the copyright registration at issue herein. Le Château's First Set of Interrogatories and Second Request for Production of Documents (Exhibits C and D to the Quinto Declaration), personally served on March 10, 2011, required the production of evidence concerning how each of the patterns subject to the copyright registration certificate at issue were marketed and sold. In response, plaintiff *refused to provide any information* and, instead, merely asserted objections that, even if they had been meritorious, would have been barred by plaintiff's failure to timely respond.[15]

Because plaintiff has failed to keep and/or refused to produce evidence critical to many of the hundreds of copyright infringement cases it has brought, the Court may infer that the evidence withheld would have been damaging to plaintiff's case. *See Stevenson v. Union Pacific Railroad Co.*, 354 F.3d 739, 746 (8th Cir. 2004) (holding that in determining whether to impose an adverse inference sanction, a court must consider (1) whether the record retention policy is reasonable considering the facts and circumstances surrounding those documents, (2) whether lawsuits have been filed frequently concerning the type of records at issue, and (3) whether the document retention policy was instituted in bad faith). However, as set forth below, the Court need not rely on such inference because plaintiff no longer disputes it.

### C. Plaintiff Has Now Admitted that Its Registration Application Averment Was "Incorrect."

Plaintiff has now conceded that the representation made in its December 19, 2005 Certificate of Copyright Registration that the 12 patterns registered pursuant thereto were published as a collective work is untrue. On May 5, 2011, plaintiff applied for a Supplementary Registration of the pattern-in-suit. Its application conceded the existence

---

[15] Quinto Dec., ¶ 11 and Exhibits J-K thereto.

of "Incorrect Information in Basic Registration," explaining that the various patterns subject to that registration "may have been published separately," rather than as a collection of published works as claimed in the registration.[16] Accordingly, it is now undisputed that plaintiff's registration of a published collection was obtained improperly and cannot support the exercise of subject matter jurisdiction.

### III. PLAINTIFF HAS NOT CURED THE JURISDICTIONAL DEFECT.

Plaintiff's belated attempt to procure a registration of just the pattern in suit cannot confer subject matter jurisdiction on the Court *ex post facto*. That is so for several reasons.

First, the existence of subject matter jurisdiction depends on the facts as they existed when the complaint was filed. *See Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S. Ct. 858, 860 (1991). If a claim alleged does not "arise under" federal law, the complaint cannot be amended to allege a different claim. Instead, the action must be dismissed. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830-31, 109 S. Ct. 2218, 2222 (1999). *See also Mollan v. Torrance*, 22 U.S. (9 Wheat.) 536, 538, 6 L. Ed. 154 (1824) (jurisdiction "depends upon the state of things at the time of the action brought"); *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 248 (7th Cir. 1981) ("Jurisdictional questions are answered by reference to the time of the filing of an action . . . ."); *Mobil Oil Corp. v. Kelley*, 493 F.2d 784, 786 (5th Cir. 1974) (jurisdiction "is determined at the outset of the suit"). When plaintiff filed its suit, the federal courts lacked subject matter jurisdiction to hear it and no amendment was then possible to cure the defect. Accordingly, constitutional requisites require that the action be dismissed.

Second, there is no evidence that this Court would have jurisdiction to hear plaintiff's complaint if it were re-filed today. The Copyright Act requires that a copyright plaintiff have either obtained or been denied registration as a prerequisite to bringing an

---

[16] Quinto Dec., ¶ 14 and Exhibit P thereto.

infringement action. *See* 17 U.S.C. § 411(a). *See, also, La Resolana Architects, P.A. v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1202-04 (10th Cir. 2005) and *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1489 (11th Cir. 1990), *abrogated in part by Reed Elsevier Inc. v. Munchnick*, 559 U.S. ___, 130 S. Ct. 1237, 1243 & n.2, 176 L. Ed. 2d 18 (2010). The only evidence of an accurate copyright registration application is that plaintiff *applied* online in May, 2011 for a "Certificate of Supplementary Registration" (seeking to eliminate the registration of all other patterns registered pursuant to the Certificate of Registration on which plaintiff's complaint is based). Significantly, plaintiff did not submit any evidence that the Copyright Office issued or denied the requested Certificate of Supplementary Registration, or even received payment for it.[17]

Third, even if plaintiff succeeds in obtaining a Certificate of Supplementary Registration, such registration would have no effect on the initial registration on which plaintiff suit is based. The Copyright Office rules, set forth in *Compendium II of Copyright Office Practices*, provide that "information contained in a supplementary registration augments but does not supersede the basic registration." *See* §1504.08(b). And, even if plaintiff did obtain a supplementary registration, the *Compendium II of Copyright Office Practices* makes clear that it would not be "appropriate . . . [t]o reflect changes in the content of a work." *See* § 1504.04.

For all these reasons, plaintiff's artifice in seeking (but evidently not yet obtaining) a new registration in 2011 of the pattern-in-suit cannot alter the fact that subject matter jurisdiction was lacking when it filed suit in 2010.

## IV. THE ALLEGED INFRINGEMENT WAS DE MINIMIS AND, HENCE, IS NOT ACTIONABLE

Le Château is independently entitled to summary judgment for another reason. It is well settled that *de minimis* copyright infringement is not actionable. *Newton v.*

---

[17] Quinto Dec., ¶ 14.

*Diamond*, 388 F.3d 1189, 1192-93 (9th Cir. 2004). As the Ninth Circuit explained, "even where the fact of copyright is conceded, no legal consequences will follow from that fact unless the copying is substantial." Here, Le Château is accused of infringing just 1 of 12 works, or 8.5 percent of the collective work at issue. Because there is no claim that Le Château infringed the other 91.5 percent of the collective work, there could not be a substantial infringement as a matter of law. For this reason, as well, plaintiff's claims must be dismissed.

## V. LE CHÂTEAU SHOULD BE AWARDED ITS COSTS AND ATTORNEYS' FEES

The Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party." Further, "the court may award a reasonable attorney's fee to the prevailing party as part of the cost." 17 U.S.C. § 505.

In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114. S. Ct. 1023, 127 L.Ed. 2d 455 (1994), the Supreme Court held that in exercising its discretion to award attorney's fees to prevailing copyright plaintiffs or defendants, courts should take an "even-handed" approach that treats both sides equally. The Supreme Court approvingly cited one circuit court's consideration, as nonexclusive factors, of the losing party's "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 534, n.19, citing *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986).

Here, plaintiff has clearly pursued a frivolous, objectively unreasonable suit for an improper motivation. It has always known that the Court lacks subject matter jurisdiction.

Moreover, plaintiff knew how to correct the problem, had it wanted to do so. In *L.A. Printex Industries, Inc. v. By Design, LLC*, No. CV 09-9320 R (AJWx), also filed in the Central District of California, plaintiff had registered a purported collection of

published textile design patterns pursuant to Certificate of Registration No. VAu 613-5916 on February 23, 2004. However, to avoid the very problem at issue herein, plaintiff obtained a subsequent Certificate of Registration, No. VAu 756-171, on July 16, 2010, that "removed" all the patterns that were not at issue in the litigation, in the process conceding that, contrary to the averments in the initial registration, the pattern at issue was "unpublished." *See* Quinto Dec., ¶ 13 and Exhibit M thereto.

Because an evidentiary hearing is ordinarily required to determine the amount of any attorney's fee award, *see Crescent Publishing Group v. Playboy Enterprises, Inc.*, 246 F.3d 142, 147 (2d Cir. 2001), Le Château respectfully requests that the Court award it attorney's fees in an amount to be determined upon further briefing.

### Conclusion

For the reasons set forth above, Le Château respectfully requests that its motion be granted in all respects.

DATED: August 16, 2011

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____
Celine Crosa Di Vergagni
Attorneys for Defendant
Le Château, Inc.