UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

L.A. PRINTEX INDUSTRIES, INC.,

    Plaintiff,

-v-                                          No. 11 Civ. 4248 (LTS)

LE CHATEAU, INC. et al.,

    Defendants.

------------------------------------------------------------x



## MEMORANDUM OPINION AND ORDER

    Plaintiff L.A. Printex Industries, Inc. ("Plaintiff" or "LAP") brings this action against Le Chateau, Inc. ("Defendant" or "Le Chateau") for copyright infringement. Plaintiff's claims arise from Le Chateau's alleged misappropriation of one of LAP's original textile designs. The Court has jurisdiction of this action pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. and 28 U.S.C. §§ 1331 and 1338(a) and (b). The parties have cross-moved for summary judgment. The Court has considered carefully all of the parties' arguments and submissions and, for the following reasons, grants Plaintiff's motion and denies Defendant's motion.

## BACKGROUND

    The following facts are undisputed unless otherwise indicated. LAP is a Los Angeles-based design company that creates original textile designs, or purchases the exclusive rights to textile designs created by art studios. (Declaration of Jae Nah in Support of Plaintiff's Motion for Summary Adjudication (hereinafter "Nah Decl.") ¶ 2.) The design at issue is an

original work depicting interlaced geometric elements and latticework imagery, and is titled E50193 ("Subject Design"). (Id. at ¶ 3; see also id., Exh. 1.) The Subject Design was created by LAP's design team, and then prepared and formatted for use on textiles. (Id. ¶ 4.) The Subject Design was then registered with the United States Copyright Office on December 19, 2005, as part of a collection of twelve works labeled "Ethnic (Group 12)," and was assigned U.S. Copyright No. VA 1-334-916. (Id.; see also id., Exh. 2.) The registration certificate states that the twelve works of "Ethnic (Group 12)" were published on December 7, 2005. (Id., Exh. 2.)

Le Chateau is a Canadian corporation that operates retail stores throughout Canada. (Declaration of David W. Quinto in Support of Le Chateau's Motion for Summary Judgment ¶ 3 (hereinafter "Quinto Decl.").) Prior to the commencement of the instant action, LAP discovered that Le Chateau was selling garments and accessories bearing a version of the Subject Design (collectively, the "Infringing Garments") in the United States. (Declaration of Jae Nah Opposing Le Chateau's Motion for Summary Judgment ¶ 2 (hereinafter "Nah Opposition Decl."); see also Nah Decl., Exh. 5.) The Infringing Garments were manufactured by Le Chateau in Canada, labeled with "Le Chateau" tags, and sold at "Le Chateau" retail stores in New York. (Declaration of Scott A. Burroughs Opposing Le Chateau's Motion for Summary Judgment (hereinafter "Burroughs Opposition Decl.") ¶¶ 3-4); see also Nah Decl., Exh. 5.) Le Chateau concedes that it controls the "Le Chateau" stores, which are run by Le Chateau's wholly-owned subsidiary, Charming Shoppes, Inc. ("CSI"). (Nah Decl., Exh. 6, Nos. 14, 20.) Le Chateau owns 100% of CSI's equity, Le Chateau and CSI share executives, and Le Chateau has the authority to create CSI's company policy. (Id., Exh. 6, Nos. 18-20; Exh. 7, No. 12. ) Le Chateau disclaims knowledge of the source of the pattern printed on the Infringing Garments.

(Id., Exh. 7, Nos. 2-4.) Le Chateau provided 77 garments and 14 bags[1] bearing a version of the Subject Design to CSI for sale in "Le Chateau" stores (Id. Exh. 7, Nos. 9, 20. ) Le Chateau stipulates for purposes of this motion practice that the Subject Design and the design printed on the Infringing Garments are substantially similar. (Declaration of Scott A. Burroughs in Support of Plaintiff's Motion for Summary Adjudication (hereinafter "Burroughs Decl.") ¶ 1; Exh. 8)

LAP filed this action against Le Chateau on June 9, 2010, in the United States District Court for the Central District of California. On March 9, 2011, during discovery, Le Chateau asked LAP to produce the following: all textile design patterns subject to copyright Certificate of Registration No. VA 1-334-916, a deposit copy of the copyright registration application, and all documents sent to or received from the Copyright Office related to the registration of the copyright at issue herein. (Quinto Decl., Exh. B.) On March 10, 2011, Le Chateau served a Second Request for Production of Documents and Things, as well as a First Set of Interrogatories, seeking to discover whether the twelve patterns subject to the collective copyright registration No. VA 1-334-916 had, in fact, been published as a "collection." (Id., Exhs. C, D.) The documents LAP ultimately produced in response to Le Chateau's First Set of Requests for Production included only the pages of the Certificate of Registration relevant to the Subject Design, and provided no information as to the other eleven patterns registered pursuant to the Certificate. (See id., Exh. G, pp. 28-30.) LAP produced no other evidence regarding the publication or sale of the twelve registered patterns. There is no indication in the record that Le Chateau ever moved to compel LAP to make further discovery regarding the sale of the patterns or its registration application. Ultimately, Le Chateau independently obtained a certified copy of the relevant copyright registration materials, which reflected that twelve distinct patterns were

---

[1] Seven of the fourteen bags were never sold. (Nah Decl., Exh. 7, No. 9.)

registered pursuant to Certificate No. VA 1-334-916. (Id. ¶ 9; Exh H.)

On May 5, 2011, LAP submitted an application for Supplementary Registration to the United States Copyright Office, seeking to correct errors in the Basic Registration for VA 1-344-916. (Id., Exh. P.) The Supplementary Registration application noted that the works listed in the Basic Registration "may have been published separately," rather than as part of a collection, and sought to convert the original collective work registration to a single work registration protecting only the Subject Design. (Id.) To date, the Copyright Office has neither granted nor denied LAP's application for a Supplementary Registration.

This case was transferred from the Central District of California on June 22, 2011, and all motions pending at that time were denied as moot. Following the transfer, the parties filed the motions for summary judgment that are currently before this Court.

DISCUSSION

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (the moving party bears the burden of establishing that there is no genuine issue of material fact).[2] A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller

---

[2] Correspondingly, summary judgment will be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 US 317, 322 (1986).

& Co. Inc., 258 F.3d 62, 69 (2d Cir.2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)). Similarly, "mere conclusory allegations, speculation or conjecture" will not suffice to defeat summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir.1996); see also Fed. R. Civ. P. 56(e).

When deciding cross-motions for summary judgment, the standard to be used "is the same as that for individual summary judgment motions and a court must consider each motion independent of the other." Schultz v. Stoner, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004) (internal quotations omitted).

Defendant Le Chateau's Motion for Summary Judgment

Defendant initiated the current round of summary judgment motions, contending, inter alia, that it is entitled to judgment as a matter of law because Plaintiff has not proven the validity of its copyright registration.

To prevail on a claim of copyright infringement, LAP must establish: "(I) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003). "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C.A.

§ 411(a) (West Supp. 2011).[3] The absence of a valid copyright registration, therefore, would bar a plaintiff from bringing a viable copyright infringement action.[4]

The Subject Design was registered with the United States Copyright Office, pursuant to Certificate of Registration No. VA 1-344-916, as part of "Ethnic (Group 12)," a "published" collection consisting of twelve distinct textile patterns. Registration as a "published" collection requires that all of the constituent elements of the collection have been published together[5] *as a collection*. See, e.g., United Fabrics Int'l, Inc. v. C&J Wear, Inc., 630 F.3d 1255, 1259 (9th Cir. 2011) ("When one registers a collection of works in a single copyright, it can be registered either as a 'published' or an 'unpublished' collection. A necessary element of a published collection copyright is that the collection is sold, distributed or offered for sale concurrently"); Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 205 (3d Cir. 2005) ("single work registration requires, in the case of published works, that all of the self-contained works be included in a single unit of publication and share the same copyright claimant") (internal quotations omitted). Le Chateau argues that the copyright registration is invalid because LAP has failed to produce evidence that the twelve component works of the registered collection were offered for sale as a collection.

A certificate of registration from the U.S. Copyright office is prima facie

---

[3] A party whose application for registration is rejected may, upon compliance with certain conditions, institute a civil action for infringement. 17 U.S.C. § 411(a).

[4] The Supreme Court has held that, while § 411(a)'s registration requirement "does not restrict a federal court's subject-matter jurisdiction," it is still "a precondition to filing a claim." Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1241 (2010).

[5] Publication in the copyright context is defined as "the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies . . . to a group of persons for purposes of further distribution . . . or public display, constitutes publication. A . . . display of a work does not of itself constitute publication." 17 U.S.C.A. § 101 (West 2005).

evidence of the validity of the copyright and of the facts stated in the certificate. 17 U.S.C. §410(c). "[P]ossession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable." Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir. 1997) (internal quotations omitted). Once a plaintiff has proffered its certificate of copyright registration, the defendant may rebut the presumption with evidence that the work at issue is non-original or non-copyrightable. See id. Here, Le Chateau has presented no evidence that the Subject Design is not original, or that it is not eligible to be copyrighted. Compare Fonar, 105 F.3d at 104-05 (presumption not rebutted when defendant raised no substantive challenge to the copyrightability of plaintiff's software) with Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d 452, 455-56 (2d Cir. 1989) (presumption rebutted because clothes and costumes are not copyrightable).

A defendant may also contend that a copyright registration is invalid because of noncompliance with formal registration requirements or rules, such as the withholding or misstatement of information in connection with the registration application. Such an argument is treated in a manner similar to an allegation of fraud on the copyright office. Thus, mere evidence of the non-compliance is not sufficient, and the party seeking to rebut the presumption of validity must tender evidence that the misstatement or other non-compliance was deliberate. See, e.g., Fonar, 105 F.3d at 105 ("only the *knowing* failure to advise the Copyright Office of facts which might have occasioned rejection of an application constitutes reason for finding the registration invalid") (internal citations omitted); Eckes v. Card Price Update, 736 F.2d 859, 861-62 (2d Cir. 1984) (no evidence of fraud so presumption not rebutted on that basis).

Le Chateau contends here that LAP's registration of the Subject Design is invalid because LAP failed to comply with the requirement that all of the components of the "Ethnic

(Group 12)" collection have been published at the same time. Le Chateau has failed to meet its burden of demonstrating that the presumption of validity attached to LAP's Certificate of Registration should be found rebutted because, in its application to the copyright office, LAP made a deliberate misrepresentation. The statement in LAP's application for Supplementary Registration, that the works listed in the Basic Registration "may" not have been published as a collection, is not conclusive evidence that the original statement was false. (See Quinto Decl, Exh. P.) Nor has Le Chateau proffered any evidence that any misstatement in LAP's original registration application was made in bad faith. Rather, Le Chateau cites to court decisions (one of them since reversed) post-dating the December 2005 collection application, which raised the issue of whether other collection registrations by LAP were invalid on publication grounds. See, e.g., L.A. Printex Industries, Inc. v. Aeropostale, No. CV 08-07085, 2010 WL 2813800 (C.D. Cal. 2010), rev'd, No. 10-56149, 2012 WL 91316 (9th Cir. Jan. 12, 2012); Quinto Decl., Exh. N (copy of jury instruction in L.A. Printex Industries, Inc. v. Belk, Inc., et al., No. 08cv08268 (C.D. Cal.), explaining that "a necessary element of a published collection copyright is that the collection is sold, distributed or offered for sale concurrently" and that "if [all designs] in the collection . . . were not first published together as a unit . . . the copyright is invalid"). Neither of these decisions demonstrates that any conduct by LAP in connection with the 2005 application was committed in bad faith; their existence is thus insufficient to sustain Le Chateau's burden of demonstrating a factual basis for invalidation of the registration that is at issue here.

Le Chateau also seeks the benefit of an adverse inference on this issue, complaining that LAP's responses to discovery requests propounded by Le Chateau were incomplete or evasive. Rule 37 of the Federal Rules of Civil Procedure provides for adverse inferences as a possible sanction where a party fails to comply with a court order to make

discovery. Fed. R. Civ. P. 37(b)(2). The predicate court order must be sought by motion, and the motion itself must be preceded by a good faith effort to obtain the disclosure without court action. Fed. R. Civ. P. 37(a). Here, although the responses that Defendant claims were insufficient had been served almost four months before Le Chateau initiated the instant motion practice, there is no indication that Le Chateau sought an order compelling disclosure of the information. Nor is there any indication that, in responding to the requests and serving its objections, LAP acted with a culpable state of mind warranting the exercise of the Court's inherent power to sanction discovery misconduct. See Residential Funding Corp. v. De George Financial Corp., 306 F. 3d 99, 107 (2d Cir. 2002) (a party seeking an adverse inference instruction on the basis of discovery misconduct "must show (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense"). Le Chateau's request for an adverse inference is therefore denied.

      Defendant Le Chateau has failed to carry its burden of proffering evidence sufficient to overcome the presumption of validity arising from Plaintiff's registration of the Subject Design as part of the "Ethnic (Group 12)" collection. Le Chateau thus has failed to demonstrate that it is entitled, as a matter of law, to summary judgment dismissing Plaintiff's claims, and its motion will be denied.

LAP's Motion for Summary Judgment

      LAP has filed its own motion, seeking partial summary judgment of liability as

to Le Chateau's copyright infringement. In order to prevail on its motion, LAP must establish that there is no genuine issue of material fact as to 1) its ownership of a valid copyright; and 2) Le Chateau's infringement of that copyright.

For the reasons explained above, LAP is entitled to rely on the presumption of validity arising from its Certificate of Registration, and Le Chateau's proffers and arguments are insufficient to raise a genuine dispute of fact as to the validity of LAP's copyright in the subject design.[6]

As to the second element -- Le Chateau's infringement of LAP's copyright -- LAP must establish that there is no genuine issue of material fact as to whether Le Chateau infringed LAP's Subject Design and that LAP is entitled to judgment as a matter of law. Under 17 U.S.C. § 106, the owner of a copyright has the exclusive right to reproduce the copyrighted work, prepare derivative works based upon the copyrighted work, and to distribute copies of the work to the public by sale or other transfer of ownership. LAP argues that Le Chateau directly infringed LAP's rights in the Subject Design by distributing and importing the Infringing Garments, vicariously infringed LAP's rights in the Subject Design through CSI's sales of the Infringing Garments, and is also liable as an alter ego for CSI's infringing conduct.

"Since direct evidence of copying is seldom available, copying may be inferred

---

[6] Le Chateau, in its opposition to LAP's motion for summary judgment, makes a request, pursuant to Federal Rule of Civil Procedure 56(f), for an opportunity to compel responses to its discovery requests on the issue of whether the twelve component designs of "Ethnic (Group 12)" were published as a collection. "A district court's decision whether to grant a motion for a continuance under Rule 56(f) is discretionary." MM Arizona Holdings LLC v. Bonanno, 658 F. Supp. 2d 589, 596 (S.D.N.Y. 2009). Given the age of this case, the extensive record of dispositive motion practice and opportunities for discovery before and after the case's transfer to this district, and Le Chateau's failure to proffer any non-speculative basis for belief that discovery will produce evidence of bad faith conduct in connection with LAP's 2005 registration, the Court denies Le Chateau's request for a Rule 56(f) continuance.

where a plaintiff establishes that the defendant had access to the copyrighted work and that substantial similarities exist as to the protectible material in the two works." Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir. 1995). Alternatively, "if the two works are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." Id. Two works are "strikingly similar" if similarities exist "of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." Testa v. Janssen, 492 F. Supp. 198, 203 (W.D. Pa. 1980) (quoting Stratchborneo v. Arc Music Corp., 357 F. Supp. 1393, 1403 (S.D.N.Y. 1973)). An examination of LAP's Subject Design and the design printed on the Infringing Garments reveals that the designs appear identical. (See, e.g., Nah Decl., Exhs 1, 5.) Indeed, Le Chateau has stipulated that the designs are substantially similar. (Burroughs Decl. ¶ 1; Exh. 8.) Le Chateau does not contend that it created the design used on its products independently. Rather, it disclaims any knowledge as to how it obtained the design printed on the Infringing Garments. (Nah. Decl., Exh. 7, Nos. 2-4.)

Citing only a decision in which a sampling of a three-note sequence from a musical composition was held to be non-actionable de minimis use, Newton v. Diamond, 388 F.3d 1189, 1192-93 (9th Cir. 2004), Le Chateau argues that because it is accused of infringing only one of the twelve designs copyrighted as Ethnic (Group 12), its infringement was de minimis and, therefore, not actionable. This argument is meritless. Unlike the unrecognizable three-note snippet at issue in Newton v. Diamond, the pattern on the Infringing Garments reproduces the whole of the Subject Design in a manner that is almost indistinguishable from LAP's copyrighted original. The infringement is far from de minimis. See Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 566 (1985) ("The fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the

copied material, both to the originator and to the [infringer] who seeks to profit from marketing someone else's copyrighted expression"); see also Salinger v. Random House, Inc., 811 F.2d 90, 98 (2d Cir. 1987) (copying 10% of 42 letters not de minimis). LAP has carried its burden of demonstrating that the Le Chateau garments and bags infringed upon its valid copyright in the Subject Design. The undisputed evidence of record is also sufficient to demonstrate that Le Chateau is liable as a direct infringer.

Le Chateau provided the Infringing Garments to CSI for sale in New York retail stores. (See Nah Decl., Exh. 6, Nos. 21-23; Exh. 7, No. 20.) Although Le Chateau did not itself sell the Infringing Garments, the Copyright Act provides that a party is directly liable for infringement if it *authorizes* infringing acts. See 17 U.S.C. § 106; see also Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 435 n.17 (1984) (under the Act, "an infringer is not merely one who uses a work without authorization by the copyright owner, but also one who authorizes the use of a copyrighted work without actual authority from the copyright owner"). By providing the Infringing Garments to CSI to sell through "Le Chateau" stores, Le Chateau clearly authorized CSI to commit copyright infringement. Le Chateau does not dispute these facts or otherwise counter LAP's argument. Accordingly, LAP has sufficiently established that there is no genuine issue of material fact as to whether Le Chateau directly infringed LAP's rights in the Subject Design, and Le Chateau's liability for damages arising from that infringement.[7] LAP is therefore entitled as a matter of law to partial summary judgment of liability.

---

[7] In light of its finding that Le Chateau is directly liable for copyright infringement, the Court does not consider whether Le Chateau is also vicariously liable or subject to alter ego liability.

CONCLUSION

For the foregoing reasons, Le Chateau's motion for summary judgment is denied in its entirety. LAP's motion for summary adjudication is granted.

The initial pretrial conference in this case is scheduled for April 5, 2012, at 12:30 p.m. The parties are directed to consult with each other and submit their joint pre-conference statement in advance of the conference, as required by the Court's June 30, 2011, Initial Conference Order (docket entry no. 63.)

This Memorandum Opinion and Order resolves docket entry nos. 66 and 79.

SO ORDERED.

Dated: New York, New York
March 23, 2012

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge